327 So.2d 533 (1976)
Ira L. CAMPBELL, Sr., Plaintiff-Appellee,
v.
Michel P. LELONG TRUST et al., Defendants-Appellants.
No. 12781.
Court of Appeal of Louisiana, Second Circuit.
February 9, 1976.
Rehearing Denied March 15, 1976.
Writs Refused April 30, 1976.
*534 Cook, Clark, Egan, Yancey & King by Herschel E. Richard, Jr., Shreveport, Gerard F. Thomas, Jr., Natchitoches, for defendants-appellants.
Bodenheimer, Jones, Klotz & Simmons by J. W. Jones, Shreveport, for plaintiffappellee.
Before HALL, MARVIN and SMITH, JJ.
En Banc. Rehearing Denied March 15, 1976.
SMITH, Judge.
Defendants, the beneficiaries of a trust dissolved during the course of this litigation, appeal from a judgment in favor of plaintiff, Campbell, and against them for $7,415.93 awarded as damages for failure of the trust to comply with its obligations under a sale of land and a cotton allotment to plaintiff.
By cash deed executed by the vendors on December 15 and December 18, 1970, and January 2, 1971, the Michel P. Lelong Trust and its beneficiaries, sold to Ira L. Campbell, Sr., a tract of land in Red River Parish containing approximately 365 acres, together with a cotton allotment as follows:
"Vendor, for the stated consideration does hereby sell, convey, deliver and assign unto Vendee 150 acres of cotton allotment as per ASC Program or other governmental agricultural programs, and further agrees to execute any and all other necessary documents, papers, assignments, etc. in order to effect said transfer as may be required by any appropriate governmental agencies."
The deed further provided that it was in full compliance and pursuant to an agreement to purchase and sell entered into between the trust and Campbell dated November 28, 1970.
Thereafter, on February 16, 1971, the vendor trust filed an owner designation of transfer with the ASCS office as follows:
"We agree to transfer of 150.0 acres of 1970 cotton allotment to the tract purchased by Ira L. Campbell. This will amount to 99.5 acres of 1971 cotton allotment being transferred to the tract purchased by Ira L. Campbell."
The ASCS committee allocated to plaintiff 99.5 acres. Plaintiff pursued appropriate administrative remedies to obtain the 150 acres but was unsuccessful.
Plaintiff filed suit against the trust and the County Executive Director of the parish ASCS office praying to be recognized as owner of the 150 acre cotton allotment and for damages against the trust. The suit was removed to Federal Court by the federal agency. The Federal District Court held that the governmental agency had done all it was required to do under the law and dismissed it from the suit. The suit as between plaintiff and the trust was remanded to state court.
The case was tried. During the course of litigation the trust was dissolved and the beneficiaries were substituted as parties defendant. For oral reasons contained in the record the district court held that the vendor acted arbitrarily in failing to transfer the 150 acres of cotton allotment to plaintiff as called for by the deed. Damages were awarded to plaintiff based on the difference in the government payment actually made on the 99.5 acres and the payment that would have been made on 150 acres for the years 1971, 1972 and 1973. The district court did not render any judgment pertaining to ownership or *535 requiring transfer of the additional acreage. The defendant beneficiaries of the trust appealed.
The record shows that before the transfer at issue here, defendants owned 2,600 acres of land and had approximately 400 acres of cotton allotment. The cotton allotment made by the Federal government amounted to the right to receive a subsidy based on cotton production from the designated lands.
In 1970, negotiations began between the representatives of the Lelong trust and plaintiff for the transfer of the 365 acre tract of which 275 acres were in cultivation. The first proposal by the trust was for the transfer of the land along with 75 acres of cotton allotment. Campbell rejected this offer after learning from the Trust's tenant that the tract history of cotton production, the basis of allotments made by the committee, qualified it for an allotment of 120 acres. Another offer, this time including the full 120 acre allotment, was made by the Trust. This offer was also rejected by plaintiff.
At some time after the second offer, either through application to the Committee or by purchase from another landowner, the Trust obtained the right to an additional few acres of cotton allotment attributable to its total acreage. A third offer, including 150 acres of cotton allotment along with the 365 acre tract, was then made by the Trust. Campbell accepted this offer.
On November 2, 1970, the Trustee petitioned the district court for authority to sell the property with the 150 acres of cotton allotment. The proposed buy-sell agreement was attached to the petition for authority. A showing was made by the trustee that the transfer would financially benefit the Trust. An order authorizing the transfer was signed by the court on that day.
The record reveals that the buy-sell agreement was signed by two of the beneficiaries in France on November 13 and 20, 1970. That agreement was signed on behalf of the trust and by Campbell on December 7, 1970. The cash sale deed pursuant to this agreement was subsequently completed as noted above.
The seller was unable to deliver possession of the land until January 1, 1971, because the property was leased through December 31, 1970, hence the buy-sell agreement.
On November 30, 1970, Congress passed Public Law 91-524 which had the effect of reducing cotton acreage allotments by approximately one-third. That law was to be effective beginning with the 1971 crop year. Notices of the changes in allotments were mailed around January 7, 1971. Based on the reduction in base acreage allotments, a 150 acre allotment pursuant to the 1970 program would be equivalent to a 99.5 acre allotment under the 1971 program. Defendant's total allotment of 400 acres plus the extra acares obtained in 1970, was reduced to 312 acres on January 1, 1971, as a result of the one-third reduction by the Federal Government.
It is the plaintiff's position that he is entitled to 150 acres of cotton allotment under the 1971 program, not the 1970 program, and that as a result of defendant's breach of the contract he was denied production of 50.5 acres of cotton. On the other hand, the defendants-vendors contend that the sale by them was of 150 acres of allotment under the 1970 program and that they were required to transfer only 99.5 acres pursuant to the agreement as modified by the 1971 law. The defendants contend in the alternative that, even if they were required by the contract to transfer the additional 50.5 acres, plaintiff suffered no damages as a result of their failure.
The trial court held that the deed should be given effect as written and according to the circumstances existing at the time of the transfer. He granted judgment in favor of plaintiff for damages. We agree with the trial court's assessment of the obligations imposed on the vendor by the *536 express, unambiguous terms of the contract. We must reverse the judgment, however, because of our finding that the trial court improperly assessed the damages suffered by plaintiff as a result of the breach of contract.
A court is not justified in fixing damages in the absence of definite proof. The plaintiff has the burden of proving the damage suffered by him as a result of the breach of contract. In a breach of contract action, the plaintiff is entitled to recover the amount of loss he has sustained and the profit of which he has been deprived. LSA-C.C. art. 1934. While the absence of independent, corroborating evidence may not be fatal to the plaintiff's burden of proof, the lack of even a minimal degree of detail or specificity as to the extent of loss precludes an award. Casadaban v. Bel Chemical & Supply Company, Inc., 322 So.2d 854 (La.App., 1st Cir. 1975). Speculation and conjecture cannot be accepted as a basis for fixing loss of earnings or profits. Jones v. Rodgers, 179 So.2d 674 (La.App., 2d Cir. 1965).
In his petition plaintiff alleged that he had been deprived of cotton production on the 50.5 acres of cotton allotment that the defendants failed to transfer to him. Plaintiff itemized his damages as the profit he lost by reason of not being able to produce cotton on the 50.5 acres. No proof was offered at the trial in support of such a measure of damages.
The evidence adduced at trial indicates that the government allotments were not related to permissible production which was unlimited, but, rather, only dealt with the maximum acreage on which cotton production was subject to the government subsidy allowed the cotton producer. There was no damage to plaintiff because he, in fact, planted no cotton. Further, there was no limit on the acreage he could have planted.
The trial court allowed plaintiff an amount purportedly equivalent to the subsidy that would have been paid by the government on 50.5 acres of cotton production. The cotton subsidy could only be paid to one producing cotton on the allotted acreage. Campbell testified that he himself did not produce cotton; therefore, he did not receive any subsidy. Rather, he leased the property for a fixed sum to another individual. Campbell's lessee received the subsidy based on his cotton farming operations.
The evidence indicates that the rental charged by Campbell was not related to the subsidy paid by the government. Campbell's lessee paid a rental of $6,000.00 in 1971, $6,500.00 in 1972, and $3,000.00 in 1973. While there is some testimony by Mr. Campbell that the rent would have been higher if the additional 50.5 acres had been subject to the subsidy program, there is no proof of the amount of increase in rent, if any, that would have resulted from the additional acreage being included. There was testimony by Mr. Campbell that he had never discussed with his lessee the effect that the additional subsidized acreage would have had on the lessee's willingness to pay more rent.
Campbell's lessee testified that in light of the condition of the farm and the surrounding circumstances, he would not have paid a greater rental even if there had been an additional 50.5 acres of production subject to the subsidy. The rent actually paid by the lessee indicates little or no relationship between the rental and the amount of subsidy paid by the government. Even though the 1973 subsidy was only reduced by approximately 13% in relation to 1972, the rent paid for 1973 was less than one-half that paid for 1972. Obviously, there were other factors considered by the parties in arriving at a fair rental value. We have no way of determining how the subsidy payments affected the overall rent charges.
There is no evidence in the record to support a monetary evaluation of a "cotton acre" of allotment if it were to be sold or assigned to another landowner on the open market.
*537 It was, therefore, impossible for the trial court to conclude from the evidence the extent plaintiff suffered damage because of the failure of defendants to transfer the 50.5 acres of allotment to him. The trial court erred in awarding plaintiff damages.
For the foregoing reasons, the judgment of the trial court is reversed and it is rendered in favor of defendants rejecting the demands of plaintiff.
All costs are assessed against plaintiffappellee.
Reversed and rendered.
MARVIN, J., concurs with written reasons.
MARVIN, Judge (concurring).
I concur that the Trust's obligation was to assign through ASCS, 150 cotton allotment acres to plaintiff.
Plaintiff, however, alleged his damages on the basis that he was deprived of production on the 50.5 acres allotted but which the Trust failed to deliver. The Trust timely objected to any proof regarding the rental value of the property being affected and as affording a basis for damages on the grounds that this would be an enlargement of the pleadings. The lower court allowed the testimony, but subject to the objection, and the objection was made general so as to affect all subsequent testimony on the subject of the rental paid by plaintiff's tenant. The objection should have been sustained in my opinion and this court should hold that plaintiff did not prove the damages he alleged.
Simply because the plaintiff did not prove his alleged damages should not mean the case ends there. Plaintiff bargained for 150 allotment acres. The ASCS representative testified that the Committee would have given plaintiff 150 allotment acres if the Trust had directed in its letter to the Committee. This was what the Trust obligated itself to do by the terms of the agreement, by the holding of the lower court and by the holding of this court. The subsidy program after the year 1973, as I understand it from this record, is a guarantee by the government that if the price of cotton falls below 38 cents per pound, the government will pay the difference up to 38 cents on allotted acres to the landowner or his assignee. The allotment certainly has some value. Plaintiff prayed that the ASCS defendant (dismissed from the case by the federal court) be ordered to transfer to plaintiff the 50.5 acres in dispute. Under the approach of a liberal construction of the pleadings, I would hold this prayerin effect, for specific performanceto also be against the Trust and the substituted parties defendant. I would hold further that plaintiff was entitled to an order compelling defendants to direct the proper government authority to convey to plaintiff the additional 50.5 allotment acres.
The assessment by the majority of the testimony as to the rental not being based on the government allotment is correct in my opinion, and the result as to no proven damages is correct. I would assign different reasons for reaching that result however. But to say on the one hand, the obligation that was imposed on the Trust was to deliver 150 allotment acres to the plaintiff, while on the other hand, denying both specific performance and damages, is a hollow recognition of plaintiff's right and defendant's duty which produces a somewhat absurd result.
Plaintiff-appellee, however, did not answer the appeal and we are powerless to modify the judgment by granting specific performance against the Trust. See LSA-C.C.P. Art. 2133 and cases cited under this article, note 11, Vol. 5, LSAC.C.P.
I concur in the result.