378 So.2d 1054 (1979)
Lenard G. FOLDS d/b/a M. L. L. Corporation, Plaintiff-Appellee,
v.
RED ARROW TOWBAR SALES COMPANY et al., Defendants-Appellants.
No. 14002.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1979.
*1056 Banks & Moore by D. Milton Moore, III, Monroe, for defendants-appellants.
Wright & Wright by Patrick H. Wright, Jr., Monroe, for plaintiff-appellee.
Before PRICE, C. J., and HALL and JONES, JJ.
PRICE, Chief Judge.
Plaintiff filed this suit for damages resulting from defendants' breach of a contract which granted him an exclusive distributorship of defendants' products. Defendants are Red Arrow Towbar Sales Co., a South Carolina partnership, and Wallace Hawkins and Larry Poole, the individual partners. The trial court rendered judgment in favor of plaintiff. Red Arrow and Hawkins appeal. We affirm.
In the latter part of 1975 plaintiff contacted Hawkins and expressed his interest in acquiring a distributorship of Red Arrow products. Hawkins told him to contact Loren Ferry, the company's representative in charge of selling distributorships. Shortly thereafter plaintiff met with Ferry in Shreveport to discuss the details of a possible agreement. At that meeting Ferry informed plaintiff that if he would agree to make an initial purchase of $30,000 worth of merchandise, Red Arrow would grant him the distributorship.
On January 2, 1976, plaintiff and Ferry met in Alexandria to sign the distributorship agreement. This contract provided, among other things, that plaintiff would have the exclusive right to sell Red Arrow products in the state of Louisiana. It also required Red Arrow to provide training for plaintiff's sales employees. The contract required plaintiff to devote his full time and energy to the sale of Red Arrow products and prohibited his selling competitive products. However, both parties understood that due to the six-month notice required for termination of his current employment, plaintiff would continue working during that period as a sales manager for another automotive equipment company. At the time the contract was signed plaintiff made the required initial purchase placing two orders for merchandise which totaled in excess of $30,000.
Despite several requests by plaintiff, Red Arrow failed to provide any assistance in training his prospective sales employees. Red Arrow continued to sell its products in Louisiana through other company representatives. In February Red Arrow refused to sell plaintiff any more merchandise although he had placed another order for approximately $14,000 worth of equipment. In October Red Arrow granted another exclusive distributorship covering a three-parish area to Herman Pritchard of Lafayette. Two pieces of Red Arrow equipment plaintiff had purchased and stored in a Lafayette warehouse were taken and sold by Red Arrow representatives without plaintiff's knowledge or authorization. Also $380 worth of merchandise included in the two initial orders was never delivered to plaintiff.
On May 26, 1976, plaintiff filed suit seeking damages for breach of contract, along with the value of the merchandise which was paid for but not delivered and the *1057 merchandise misappropriated and sold by defendants' employees.
During the following months, plaintiff filed a number of discovery motions including several sets of interrogatories addressed to the various defendants. On May 19, 1977, defendants were held in contempt of court for failing to properly respond to these interrogatories in accordance with a previous order and plaintiff was awarded $2,000 attorney fees plus costs. Applications for protective orders filed by defendants were denied. Defendants thereafter applied to this court for supervisory writs regarding the contempt citation and the denial of the requested protective orders, and on June 7, 1977, that application was denied.
The case was subsequently set for trial on April 17, 1978. On April 13 defendants filed a motion for continuance. This motion was based on the allegations that Wallace Hawkins, one of the individual defendants, could not attend the trial on that date due to the serious illness of his wife, and that Linda Blackwell, Hawkins' secretary and an alleged witness to the contract, could not attend due to an injury she suffered during the preceding week. This motion was overruled and the case was tried on April 17 as scheduled. The defense produced no witnesses.
The trial court found the January 2, 1976, contract represented the agreement between the parties, and that the defendants had breached this agreement. Judgment was rendered against all defendants in solido for $86,509.60, representing an award of $380 for merchandise purchased but never delivered; $2,639.60 for the merchandise misappropriated and sold by defendants' employees; and $83,490.00 for lost future profits. Defendants filed a motion for new trial which was denied.
Defendants Red Arrow and Hawkins appeal alleging the trial court erred in the following respects:
(1) In holding defendants in contempt of court for failing to supply adequate responses to plaintiff's interrogatories.
(2) In failing to grant the protective orders requested by defendants.
(3) In hearing evidence supporting plaintiff's rules for contempt before hearing evidence supporting defendants' exceptions of those rules.
(4) In failing to grant the continuance requested by defendants.
(5) In refusing to grant a new trial.
(6) In finding that an agreement between the parties was actually made.
(7) In failing to hold plaintiff's own nonperformance of the contract barred his recovery.
(8) In rendering judgment on the January 2, 1976, contract when plaintiff's suit was based on an alleged second contract which was never proved to exist.
(9) In awarding damages for lost future profits without sufficient substantiating proof.
Regarding the first three assignments of error we begin with the well established rule that regulation of pretrial discovery is subject to the broad discretion of the trial court and its rulings will not be disturbed on appeal absent a clear showing of abuse. Madison v. Travelers Insurance Company, 308 So.2d 784 (La.1975); Vallery v. Olin Corp., 337 So.2d 631 (La.App. 3rd Cir. 1976); Butts v. Cummings, 360 So.2d 534 (La.App. 2d Cir. 1978).
The record reflects that plaintiff filed the first of several sets of written interrogatories on May 26, 1976. A second set was filed on December 7, 1976. The defendants failed to respond and on January 20, 1977, pursuant to two separate rules to compel answers filed by plaintiff, the court ordered defendants to file either answers or objections to all interrogatories by January 31. In addition the court awarded plaintiff $100 attorney fees plus costs.
Although defendants answered the second set of interrogatories by the January 31 deadline, no answers or objections to the first set were filed by that date. On February 4, 1977, plaintiff filed a rule for contempt *1058 based on the defendants' failure to fully answer the interrogatories as ordered. On February 9 plaintiff filed another set of interrogatories.
On March 7, 1977, defendants filed answers to both the original set of interrogatories and those filed on February 9. Subsequently plaintiff filed two more rules for contempt contending several of defendants' answers were insufficient or untrue. In response to these rules defendants filed exceptions of vagueness and no cause of action in addition to two separate motions for protective orders.
On May 5, 1977, a hearing was conducted concerning the contempt rules, the exceptions made thereto, and various other discovery motions. Defendants' exceptions were overruled and the court found them in contempt, awarding plaintiff $2,000 attorney fees plus costs. Defendants' applications for protective orders were also denied.
Under these circumstances we find no abuse of discretion. Defendants' actions clearly demonstrated an unreasonable refusal to supply proper and timely responses to plaintiff's discovery efforts. Although no transcript of the May 5 hearing is contained in the record, several of defendants' answers to the interrogatories are obviously untrue or at best unreasonably evasive. Furthermore, the record clearly indicates the trial court properly considered and overruled all of defendants' exceptions to the rules for contempt. Consequently specifications of error one through three are without merit.
We next consider defendants' contention that the trial court erred in refusing to grant their motion for continuance. This motion was filed four days prior to the scheduled trial date and was based on the alleged inability of the defendants' two key witnesses to be present.
It is well settled that the trial court also has wide discretion in acting on a motion for continuance. Sauce v. Bussell, 298 So.2d 832 (La.1974); Thurmon v. Thurmon, 377 So.2d 447 (La.App. 2d Cir. 1979). In the present case, almost two years had transpired between the filing of suit and the scheduled trial date. Much of this delay was the direct result of defendants' efforts to obstruct plaintiff's preparation of his case by repeated refusals to comply with the court's pre-trial discovery orders. Even though Hawkins' wife had recently undergone major surgery and may have required constant attention, it was not unreasonable to expect him to make arrangements whereby he could at least make a brief appearance to give his own testimony. Most importantly, however, there was no showing made that the testimony of either of these two witnesses would have consisted of anything more than a mere denial that an agreement was ever concluded and in view of the signed contract and supporting evidence that an agreement was reached, the absence of this testimony did not appreciably affect the outcome of the case. Therefore, we do not find the court's denial of the motion for continuance to be a clear abuse of discretion.
Regarding the merits of the case, defendants contend the trial court erred in finding that an agreement between the parties was consummated since plaintiff's own testimony negates any such conclusion. We do not agree.
Plaintiff testified that shortly after the January 2, 1976, contract was signed he realized it did not contain a clause agreed upon during negotiations which would allow him recovery of treble damages and attorney fees in the event of a breach by Red Arrow. He testified that this omission was acknowledged by Loren Ferry who subsequently sent him two copies of a revised contract which contained the omitted language. Plaintiff stated that while it was intended that he sign one copy for return to Red Arrow and retain the other, he inadvertently returned both copies of the new contract. No copy of this second contract was even produced and defendants' pleadings consistently denied its existence.
Although the court found that plaintiff had failed to prove the existence of the second contract, it held that an agreement was reached as evidenced by the January 2 *1059 contract. We agree with the trial court that despite plaintiff's unsuccessful attempts to show a subsequent revision, the evidence clearly established that an agreement had been reached, and that its basic provisions were in accordance with those alleged in plaintiff's petition and recited in the January 2 agreement.
Defendants also contend the trial court erred in refusing to consider plaintiff's own nonperformance of the contract because it was not specially pleaded as a defense in accordance with La.C.C.P. Art. 1005. They assert plaintiff's continuation of his employment as sales manager for another company violated the provisions of the contract requiring him to devote his full time and energy exclusively to the sale of Red Arrow products, and the inadvertence or neglect on the part of their attorney in failing to plead his defense should not be an absolute bar to the court's consideration of it. Defendants alternatively contend that even if the court's ruling were technically correct, their motion for a new trial should have been granted since plaintiff's nonperformance was apparent and would constitute an absolute defense to plaintiff's cause of action.
Neither of these contentions have merit. Although plaintiff did not immediately terminate his other employment, the evidence clearly indicates that at the time the agreement was made both parties were aware plaintiff could not terminate his previous job without giving his employer six month's notice. Furthermore, there was no showing that the products sold by plaintiff while engaged in this other employment were in direct competition with Red Arrow products. Consequently, even if the trial court had allowed defendants to urge nonperformance as a defense, the result would be unchanged since no breach by plaintiff was shown.
Defendants' final contention is that the award of damages for loss of future profits was improper. They contend plaintiff failed to prove this claim within a reasonable certainty and consequently no award for this item should be allowed.
The trial court based its award largely on the testimony of Herman Pritchard, who was granted an exclusive Red Arrow distributorship in October 1976, covering a three-parish area. Pritchard testified he earned a gross profit of $21,771 during the first nine-month period after acquiring the distributorship. The court projected this figure over a twelve-month period on a statewide basis and concluded plaintiff would have realized a gross profit of at least $125,000. After deduction of plaintiff's estimated expenses along with other miscellaneous items, the court determined plaintiff's loss to total $83,490. Although plaintiff sought recovery for profits lost over a three-year period, the court found that projection of profits for this type of operation beyond a one-year period would require too much speculation under the circumstances.
Although the rule has been variously stated, our courts are in general agreement that while damages for lost profits may not be based on speculation and conjecture they need only be proven within a reasonable certainty. George W. Garig Transfer v. Harris, 226 La. 117, 75 So.2d 28 (1954); Campbell v. Lelong Trust, La.App., 327 So.2d 533, writs refused 331 So.2d 494 and 496 (La.App. 2d Cir. 1976); Al Smith's Plumbing etc. v. River Crest, Inc., 365 So.2d 1122 (La.App. 4th Cir. 1978). However, it is also well recognized that where damage (including loss of profits) and liability are certain and quantum is uncertain, courts are nonetheless required to award damages. Southern Television Electronics v. Read, 244 So.2d 624 (La.App. 4th Cir. 1971); New Orleans Shrimp Co., Inc. v. Duplantis Truck Lines, Inc., 283 So.2d 521 (La.App. 1st Cir. 1973). Furthermore, in cases where direct evidence is not available to establish the exact extent of loss caused by a breach of contract, resort to customary or foreseeable profit as a measure of damage is proper. Al Smith's Plumbing, etc. v. River Crest, Inc., supra.
Plaintiff's testimony along with that of Pritchard and two other Red Arrow *1060 sales representatives indicated that a substantial amount of Red Arrow merchandise has been sold in the state of Louisiana. Since plaintiff was well experienced in sales of similar equipment and had in fact been successful in selling the equipment actually delivered to him by Red Arrow, we find it a reasonable certainty that he was deprived of profits from future sales due to Red Arrow's refusal to honor the exclusive distributorship agreement. We also find the trial court's method of calculating the amount of plaintiff's loss, based on profits from actual sales within the territory covered by the agreement in question, was proper.
The judgment appealed is affirmed. Costs of this appeal are assessed to appellants.