779 So.2d 808 (2000)
Roy C. JACKSON, Plaintiff-Appellant,
v.
Robert W. LARE, Jr., et al., Defendant-Appellee.
No. 34,124-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2000.
*810 Bobby L. Culpepper & Associates By: Bobby L. Culpepper, Jonesboro, Counsel for Appellant.
Dollar Laird By: R. Nicholas Anderson, Monroe, Counsel for Appellee.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
GASKINS, J.
The plaintiff, Roy C. Jackson, appeals a trial court judgment finding that, even though the defendants breached a contract with him, he suffered no damages. The defendants answered the appeal, claiming that the trial court erred in finding that there was a valid contract that was breached and erred in assessing costs to them. For the following reasons, we affirm the trial court judgment.

FACTS
The defendants, Robert W. Lare, Jr. and Gaylene M. Lare; Gregg R. Tousignant and Susan R. Tousignant; Paul B. Reiser and Stacy W. Reiser; Glenn A. Cox and Lori R. Cox; and Mark D. Reiser, were the shareholders in Bellwether Management *811 Corporation, Inc. (Bellwether). Bellwether attempted to build a Sonic Drive-In in Grambling, Louisiana. Apparently there was some tension in the community and the restaurant was burned down before it was completed. Bellwether sought to sell the drive-in. On November 10, 1996, the defendants entered into a written contract of "Purchase and Sale of Stock" with the plaintiff for the sale of all stock in Bellwether for $100. In the agreement, the plaintiff agreed to complete the Sonic Drive-In, obtain the release of the guaranty signed by the defendants at the First National Bank, Bienville Parish, for $485,000, of which there was an outstanding balance of approximately $308,000, and to hold the defendants harmless for any work already completed on the drive-in.
According to the plaintiff, about two months after signing the agreement, the defendants breached the contract by selling the drive-in to a third party, Sapp-Roberson Enterprises, Inc. (Sapp-Roberson). The plaintiff filed suit on July 15, 1997, claiming damages for breach of contract, loss of profits, embarrassment and humiliation, as well as attorney fees. The plaintiff claimed that he had made a demand for specific performance on January 7, 1997 and the defendants failed to comply. The plaintiff contended that he was not given a reasonable time within which to comply with the conditions of the contract. He claimed that he had undertaken extensive public relations work in the community and that not being permitted to complete the contract caused him humiliation and mental anguish. The plaintiff contended that because the defendants sold the property and cannot give specific performance, they must respond in damages.
Trial on the matter was held on September 9, 1999. The plaintiff testified that he was formerly the assistant dean of students at Grambling and had previously owned an interest in a car dealership in the area. Therefore, he was well known in the community. He stated that he was to be the "front man" for the new Sonic in order to garner support in the community for the project. He claimed that he did two months of public relations work talking with the mayor, town council, and other community leaders. He even claimed to have talked with the individuals suspected of setting the fire. He stated that he thought that another individual, Fred Bayles, was arranging the financing for the project. Mr. Jackson testified that he did not know he was out of the deal until after the defendants sold their interest in the drive-in to Sapp-Roberson.
Gary Lewis of the First National Bank, Bienville Parish, testified that an individual named Merlin Reiser, who is not a party to the contract and is not a defendant in this case, was personally liable on the note for the construction of the Sonic, along with Bellwether. Mr. Reiser was not excited about rebuilding the restaurant. The plaintiff was to "front" the deal in the community and was to obtain additional financial backers to complete the drive-in.
Mr. Reiser testified that he owned approximately 16 Sonics and that Bellwether Management is owned by his relatives. He stated that after the fire, the defendants entered into an agreement to sell the Grambling Sonic to the plaintiff, if he could get them off the note. Mr. Reiser claimed that in various meetings Mr. Jackson was made aware that the defendants were also dealing with other prospective buyers. Approximately two months after the signing of the contract, Bellwether and Mr. Reiser did not feel that Mr. Jackson was fulfilling the terms of the agreement. It appeared that Mr. Jackson could not arrange the necessary financing. Mr. Reiser testified that he met with Mr. Jackson and inquired whether he was going to be able "to do the deal." He stated that Mr. Jackson replied, "you know I can't." At that point Bellwether sold the Grambling Sonic to Sapp-Roberson.
Fred Bayles, who was an associate of Mr. Reiser, testified that he works for a *812 company that finds loans for people. In talking with Mr. Reiser, the situation with the fire in Grambling came up. Mr. Bayles suggested that Mr. Reiser and the defendants deal with Mr. Jackson, who had a good reputation in the community and might be able to earn acceptance for the project. The parties met and eventually executed the agreement at issue here. Mr. Bayles contacted Sonic to get the plaintiff accepted as a franchisee. Clean up work at the site was also commenced. Mr. Bayles said he consulted an engineer to look at the structure and contacted manufacturers about the price of material for the project. Mr. Bayles testified that in connection with the agreement between the plaintiff and defendants, he contacted the Rural Development Authority of Alexandria about being a guarantor on a loan from the First National Bank of Arcadia. At that point, the defendants notified the plaintiff that they were selling the drive-in to Sapp-Roberson.
Douglas Sapp, vice-president of Sapp-Roberson Enterprises, Inc., the current owner of the Sonic, testified that in the two and on-half years the drive-in has been in operation, it has not been profitable. Gregg Tousignant, a defendant in this case, testified that he is the bookkeeper for Sapp-Roberson and corroborated the testimony that the drive-in has not yet shown a profit.
On January 19, 2000, the trial court rendered judgment, finding that the defendants had breached the contract with the plaintiff, but that the plaintiff had suffered no damages. Costs were assessed to the defendants.
In reasons for judgment, the trial court found that there was an agreement between the parties for Mr. Jackson to purchase all shares of Bellwether for $100, to assume an outstanding balance of $308,000, and to complete the drive-in. The court found that this was a conditional obligation under La. C.C. art. 1767 and that the plaintiff would have the right to purchase the corporation if he could perform all the suspensive conditions, including obtaining financing and release of the defendants from their obligation with First National. However, the suspensive conditions were not fulfilled so there was no enforceable contract of sale.
The court went on to state that the defendants did not give the plaintiff a reasonable time to fulfill the conditions. The court found that only 59 days elapsed between the defendants' agreement with the plaintiff and the new contract with Sapp-Roberson. Because of the complexities of borrowing the amount of money necessary in this case, the court found that the plaintiff should have been given more time to fulfill the conditions of the contract.
The court noted that under La. C.C. art.2016, if an obligor is not able to perform, the obligee may regard the contract as dissolved and does not have to notify the obligor. According to the court, the plaintiff denied telling Mr. Reiser that he could not obtain financing for the project. Both the plaintiff and Fred Bayles testified that they were in negotiations with the Rural Development Authority of Alexandria to be guaranty on a note to the First National Bank of Arcadia. The court determined that because there was no acknowledgment by the plaintiff that he could not fulfill the conditions of the contract, the defendants violated their duty to notify the plaintiff before making the sale to Sapp-Roberson.
The court noted that the plaintiff claims he detrimentally relied on the agreement and that he suffered nonpecuniary damages of embarrassment, humiliation and mental anguish when the deal was not completed. The court found that the plaintiff failed to show that he changed his position because of reliance on the terms of the contract. The plaintiff did not prove damages to his reputation in the community. The plaintiff testified that the residents of Grambling understood what happened and did not perceive the failure *813 of the business venture as the fault of the plaintiff.
The trial court denied the plaintiff's claim for loss of profits based upon testimony by the new owner and the bookkeeper that the drive-in was not profitable. Accordingly, the court found that, although the defendants breached their agreement with the plaintiff, the plaintiff suffered no damages. The plaintiff's motion for partial new trial on the issue of damages was denied. The plaintiff appealed and the defendants answered the appeal.

DETRIMENTAL RELIANCE
The plaintiff argues that the trial court erred in rejecting his claim for detrimental reliance. He asserts that he changed his position in reliance on the defendants' representations by beginning reconstruction of the drive-in, seeking financing and garnering community support. The plaintiff claims that he suffered embarrassment, humiliation and mental anguish when his reputation was destroyed through reliance on the defendants' promises. This argument is without merit.
An appellate court may not set aside a trial court's finding of fact in the absence of clear or manifest error. Lewis v. State, Through Department of Transportation and Development, 94-2370 (La.4/21/95), 654 So.2d 311. The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Lewis v. State, Through Department of Transportation and Development, supra.
The fact finder's choice between two conflicting permissible views of the evidence cannot be manifestly erroneous. Stobart v. State, Through the Department of Transportation and Development, 617 So.2d 880 (La.1993). Where the testimony conflicts, the fact finder's reasonable evaluations and reasonable inferences of fact should not be disturbed upon review by the appellate court. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Regarding detrimental reliance, La. C.C. art.1967 provides:
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. John Bailey Contractor, Inc. v. State, Department of Transportation and Development, 439 So.2d 1055 (La.1983); Orr v. Bancroft Bag, Inc., 29,046 (La.App.2d Cir.1/22/97), 687 So.2d 1068; Knight v. State, 30,902 (La. App.2d Cir.9/28/98), 718 So.2d 646. To recover under a theory of detrimental reliance, the plaintiff must prove three elements: a representation by conduct or work; justifiable reliance thereon; and a change of position to one's detriment because of the reliance. Knight v. State, supra, If the plaintiff suffered no damage in reliance on a promise, there was no detrimental reliance.
The plaintiff argues that he fulfilled the three requirements necessary to show detrimental reliance. He argues that the defendants' promise is evidenced by the stock purchase agreement whereby the defendants purported to sell the Grambling Sonic to him. He claims that he relied on the promise by beginning reconstruction, attempting to obtain the appropriate funding and seeking to gain support for the project in the community. He claims to have changed his position to his detriment *814 by placing his reputation on the line. He claims that as a result of the defendants' breach of the agreement, his reputation was destroyed. Therefore, he changed his position in the community to his detriment.
The record does not support the plaintiffs arguments. The plaintiff did not show that he undertook any reconstruction work. The defendants contended that they commenced the clean up after the fire with insurance proceeds. Although Fred Bayles testified that he consulted with an engineer and contacted manufacturers regarding the cost of materials, there was no showing that the plaintiff actually incurred any expense in this regard. The plaintiff did not show that he did anything to reconstruct the drive-in. He offered no contracts or agreements with contractors to perform the work nor did he show what work was actually accomplished. Further, although Fred Bayles stated that he was looking into obtaining financing for the project, the plaintiff made no showing that any loans were actually applied for or that he had incurred any financial obligations whatsoever as a result of the stock purchase agreement. Also, the plaintiff failed to show that his reputation in the community was damaged in any way as a result of the breach of the agreement by the defendants. The plaintiff testified that people in the community understood that the failure of the deal to purchase the drive-in was not his fault. Accordingly, the plaintiff has failed to show that he relied to his detriment on the defendants' promise or that he changed his position in any way. The trial court correctly rejected the plaintiffs claim of detrimental reliance.[1]

PECUNIARY DAMAGES
The plaintiff contends that the trial court erred in failing to award him pecuniary damages for lost profits. The plaintiff argues that, even though the evidence did not show that the drive-in was profitable at present, it might be profitable in the future. Further, he argued that it might have been profitable under his management. Because of the breach of the contract, the plaintiff contends that he lost his opportunity to profit from the drive-in and should be compensated. This argument is without merit.
A court is not justified in fixing damages in the absence of definite proof. The plaintiff has the burden of proving the damage suffered by him as a result of the breach of contract. Campbell v. Lelong Trust, 327 So.2d 533 (La.App. 2d Cir.1976), writs denied, 331 So.2d 494, 496 (La.1976). While the absence of independent corroborating evidence may not be fatal to the plaintiffs burden of proof, the lack of even a minimal degree of detail or specificity as to the extent of loss precludes an award. Speculation and conjecture cannot be accepted as a basis for fixing loss of earnings or profits. Campbell v. Lelong Trust, supra.
In the present case, the plaintiff argues that due to the breach of contract by the defendants, he lost the potential to profit from the drive-in. However, the plaintiff simply did not sustain his burden of proving that he suffered a loss of profits as a result of the breach of contract. The unrefuted testimony shows that the drivein has never been profitable. Further, there was no showing that it would be profitable in the future. The plaintiff failed to show even a minimum degree of detail or specificity as to the extent of his alleged loss. The plaintiff seeks to recover for lost profits based upon speculation and conjecture that the drive-in might someday be profitable. Because the plaintiff failed to carry his burden of proving lost profits, the trial court correctly denied this element of damages.

NONPECUNIARY DAMAGES
The plaintiff urges that the trial court erred in failing to award nonpecuniary *815 damages. He asserts that, in addition to the profit motive in this contract, he also sought to obtain further personal gratification and recognition in the Grambling community, a nonpecuniary interest. The plaintiff contends that not only did the defendants know that the plaintiff's reputation would be damaged by the breach of contract, but they intended that result. The plaintiff asserts that he proved that his reputation in the community was damaged and therefore, he is entitled to nonpecuniary damages. This argument is without merit.
Regarding damages for nonpecuniary loss, La. C.C. art.1998 provides:
Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.
If the obligee can show that he intended to gratify a significant and nonpecuniary interest by way of the contract, and the nature of the contract supports his contention, and that the obligor either knew or should have known that failure to perform would cause nonpecuniary loss to the obligee, then nonpecuniary damages may be recovered. Young v. Ford Motor Company, 595 So.2d 1123 (La.1992); Stonecipher v. Mitchell, 26,575 (La.App.2d Cir.5/10/95), 655 So.2d 1381. Whether the gratification of some nonpecuniary interest is a principal object of the contract is a question of fact. When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of those damages. La. C.C. art.1999; Stonecipher v. Mitchell, supra.
In the present case, the plaintiff contends that he intended to further enhance his standing in the community by purchasing and operating the Sonic drive-in. He urges that through the defendants' intentional breach of the stock purchase agreement, his reputation was destroyed and he suffered embarrassment and humiliation. The trial court found that this contract did not include any nonpecuniary interests, and pointed to the plaintiffs testimony that this was an investment for him. The trial court did not err in determining that the plaintiff's intellectual gratification was not a principal object of the contract or that the defendants did not intentionally aggrieve the plaintiffs feelings. Further, the plaintiff has failed to prove that he suffered real, substantial emotional distress or loss of intellectual enjoyment as a result of the breach of this contract. See Gele v. Markey, 387 So.2d 1162 (La.1980), cited by the plaintiff. In fact, he stated that the community understood that the failure of the business deal was not his fault. Under these circumstances, the plaintiff simply failed to prove that he suffered any nonpecuniary damages in this case. The trial court did not err in rejecting his claim.

PARTIAL NEW TRIAL
The plaintiff argues that the trial court judgment is contrary to law and evidence in that he should have been awarded damages for the breach of contract by the defendants. As discussed above, the trial court did not err in failing to award damages to the plaintiff. Accordingly, the trial court did not abuse its discretion in denying the plaintiffs motion for new trial.

BREACH OF CONTRACT
In their answer to the appeal, the defendants argue that the trial court erred in finding that they breached a contract with the plaintiff. According to the defendants, the plaintiffs testimony showed that he did not understand the terms of the *816 agreement. The defendants contend that there was no meeting of the minds and therefore no contract to breach. Further, they urge that, if there was a contract, it was the plaintiff who breached the agreement by failing to fulfill any of the conditions. The defendants maintain that, after two months, it was obvious to them that the plaintiff would not be able to perform the contract. This argument is without merit.
La. C.C. art.1927 provides that a contract is formed by the consent of the parties established through offer and acceptance. The defendants argue that the plaintiff did not understand the terms of the agreement or what was intended by it. Therefore, there was no meeting of the minds and no valid agreement. According to the defendants, at trial the plaintiff demonstrated that he thought under the terms of the agreement he was to be the "front man" for the business, even though he could not state the meaning of that term. Accordingly, the defendants submit that there was no valid contract. This argument is not supported by the record. The contract at issue here sets forth the rights and obligations of the parties and what was conveyed in the agreement. Further, the trial testimony does not demonstrate, as suggested by the defendants, that the plaintiff had no understanding of the agreement. The trial court did not err in finding that there was a valid contract in this case.
We also reject the defendants' argument that it was the plaintiff who breached the agreement. The trial court found that there was a valid stock purchase agreement in this case, with suspensive conditions. Under the agreement, the plaintiff would have the right to acquire Bellwether if all the suspensive conditions were satisfied. These included obtaining financing, releasing the defendants from their financial obligations and rebuilding the drive-in. La. C.C. art. 1773 provides that if no time has been fixed for the occurrence of the event, the condition may be fulfilled within a reasonable time. Whether or not a time has been fixed, the condition is considered to have failed once it is certain that the event will not occur. La. C.C. art.2015 provides in pertinent part:
Upon a party's failure to perform, the other may serve him a notice to perform within a certain time, with a warning that, unless performance is rendered within that time, the contract shall be deemed dissolved. The time allowed for that purpose must be reasonable according to the circumstances. [Emphasis supplied.]
According to La. C.C. art.2016, when a delayed performance would no longer be of value to the obligee or when it is evident that the obligor will not perform, the obligee may regard the contract as dissolved without any notice to the obligor. In the present case, the trial court found that 59 days was not a reasonable period of time for performance of the suspensive conditions of the contract. Rather, the defendants breached the agreement by selling the drive-in to a third party. The trial court did not err in so holding.

COURT COSTS
The defendants object to the assessment of court costs against them. They argue that the plaintiff has shown no entitlement to court costs and the defendants have been penalized for no reason. This argument is without merit.
La. C.C.P. art.1920, regarding the taxing of court costs provides as follows:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
While it is a general rule that the party cast in judgment shall be taxed with costs, the trial court may assess costs of a suit in any equitable manner. Upon *817 review, a trial court's assessment of costs can be reversed only upon a showing of an abuse of discretion. Grocery Supply Company v. Winterton Food Stores, 31,114 (La.App.2d Cir.12/9/98), 722 So.2d 94. Even though the plaintiff failed to prove damages, in light of its finding that the defendants breached their contract with the plaintiff, the trial court did not abuse its discretion in assessing costs to the defendants.

CONCLUSION
For the reasons stated above, we affirm in all respects the trial court judgment finding that the defendants breached their stock purchase agreement, but that the plaintiff, Roy C. Jackson, failed to prove damages as a result of the breach. We also affirm the trial court's assessment of costs to the defendants. Costs in this court are taxed one-half to the plaintiff and one-half to the defendants.
AFFIRMED.
NOTES
[1] We also note that detrimental reliance usually comes into play when no written contract exists or the contract is found to be unenforceable.