825 So.2d 1262 (2002)
David Dewayne HEATH and Judy Annette Heath, Plaintiffs-Appellees
v.
BRANDON HOMES, INC., Joseph F. Shifflett and Donna Shifflett, Defendant-Appellant.
No. 36,184-CA.
Court of Appeal of Louisiana, Second Circuit.
August 14, 2002.
*1264 The Smitherman Law Firm by Donald Lee Brice, Jr., Shreveport, for Appellant.
Richard E. Hiller, Shreveport, Appellees.
Before NORRIS, STEWART and KOSTELKA, JJ.
KOSTELKA, J.
Brandon Homes, Inc. ("Brandon Homes") appeals the judgment rendered by the First Judicial District Court in favor of David and Judy Heath (the "Heaths"). The Heaths answered the appeal. For the following reasons, we amend the judgment, and, as amended, affirm.

FACTS
The Heaths and Brandon Homes entered into a written "Construction Agreement" dated February 4, 1997 (the "agreement") for the construction of the Heaths' home in Caddo Parish. Construction on the residence began in April, 1997. On July 13, 1997, before the completion of construction, the Heaths terminated the services of Brandon Homes.
Suit was subsequently filed by the Heaths against Brandon Homes, Joseph Shifflett ("Shifflett"), president of Brandon Homes, and his wife, Donna.[1] In their petition, the Heaths claimed that Brandon Homes had breached several elements of the agreement. Brandon Homes reconvened, claiming that the Heaths had wrongfully terminated the agreement before the completion of the house. After a three-day trial, the trial court determined that Brandon Homes had indeed breached the agreement and entered judgment for the Heaths, awarding damages in their favor. After the denial of Brandon Homes' motion for new trial, this appeal ensued. Additionally, the Heaths answer the appeal arguing that the damage award was insufficient and should be increased.

DISCUSSION
In a lengthy Oral Bench Ruling given subsequent to the conclusion of the trial, the trial court gave detailed reasons setting out various findings of fact and its ultimate conclusions of law. On appeal, Brandon Homes argues the trial court erred in ruling that it had breached the *1265 agreement and not the Heaths. For the following reasons, we find that Brandon Homes' assignment of error on that issue is without merit.
It is well settled that the trial court's finding of fact may not be set aside on appeal in the absence of manifest error or unless it is clearly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the fact-finder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). An appellate court should not substitute its opinion for the conclusions made by the district court which is in a unique position to see and hear the witnesses as they testify. In re A.J.F., XXXX-XXXX (La.06/30/00), 764 So.2d 47. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. Leal v. Dubois, XXXX-XXXX (La.10/13/00), 769 So.2d 1182.
As stated, the trial court gave lengthy and detailed reasons for its judgment. The trial court noted the testimony given by the Heaths and Shifflett, among other witnesses. In reaching the conclusion that Brandon Homes had breached the agreement, the trial court made various specific findings of fact to support its legal determination that Brandon Homes had breached specific terms of the agreement. Considering that the breach of the agreement could have resulted by any one factual incident noted by the trial court, it is unnecessary for us to discuss each finding of fact which led to the ultimate finding that Brandon Homes had breached the agreement; however, we will discuss some of the more pertinent facts which were noted by the trial court.
Section 2 of the agreement sets forth the "General Duties of the Contractor," stating as follows:
(a) The Contractor shall carefully study all Plans and Specifications and shall at once report to the Owner any error, inconsistency or omission the Contractor may discover. The Contractor shall do no work without drawings, specification or modifications approved by Owner.
(b) The Contractor shall supervise and direct the Work using his best skill and attention. He shall be solely responsible for all construction methods, techniques, sequences, and procedures for coordinating all portions of the Work.
. . . .
At trial, Mrs. Heath testified that the plans of the house did not show a gas line for the fireplace in their family room, although the plans did reflect gas to the other two fireplaces in the home. Further, she stated that although the plans did not reflect a gas line running to the family room fireplace, she and her husband certainly needed it and intended for the fireplace to have such. To Shifflett's credit, Mrs. Heath stated that he had called this omission to the Heaths' attention; however, before the problem could be rectified, a bricklayer had bricked the walls surrounding the fireplace, making it impossible to run the gas line for the fireplace. The trial court determined that the resulting omission was a result of Brandon Homes' failure to properly supervise the job. Such a finding was not manifestly wrong.
*1266 The trial court also found that Shifflett had improperly supervised some work concerning the roof. Mr. Heath testified that he observed the roofers installing shingles without felt paper underneath, and he admitted that he ordered the roofers to stop their work. Mr. and Mrs. Heath testified that Shifflett was not in town at the time, but this was disputed by Shifflett. However, whether he was in town or not, he was not on the job site when the incident occurred, and the trial court found that his absence was the cause of this incident with the roofers, evidencing a lack of supervision by Shifflett.
The trial court also determined that Brandon Homes had breached the following provision of the construction agreement:
3(c) The Contractor agrees to complete the Work in a lien-free condition for the Owner.
The trial court found "overwhelming" evidence that this provision had been violated by Brandon Homes due to the numerous liens the Heaths had to cancel subsequent to the termination of the agreement with Brandon Homes. However, Brandon Homes argues on appeal that as of the date its services were terminated by the Heaths, no liens had been filed against the house and thus, this provision had not been breached.
Although no liens had actually been filed against the property at the time Brandon Homes was terminated from the job, work had been done by subcontractors and supplies had been provided by suppliers who had not been paid despite payment to Brandon Homes by the Heaths. Although those subcontractors and suppliers had not filed liens on the property at the precise time of Brandon Homes' termination, their status was ripe for filing. Had those subcontractors and suppliers been paid timely (i.e., as Brandon Homes received funds from the Heaths), the liens never would have occurred. Moreover, as Mrs. Heath testified, at dates prior to the termination of Brandon Homes, she had asked Shifflett to provide her with lien releases evidencing payment of the subcontractors and suppliers, which were never provided.[2] Finally, Shifflett admitted at trial that he had used $31,000.00 to pay off a loan made to Brandon Homes which had no connection to the Heaths' homemonies which should have gone to pay subcontractors and suppliers who had already provided services and goods to the job. Failing to pay those subcontractors and suppliers left the Heaths exposed to liens by those parties and not in a "lien-free condition." Considering the evidence, the finding that Brandon Homes had breached this applicable provision of the agreement was not in error.
Accordingly, after considering the applicable legal theories, the terms of the agreement and the facts, the trial court made a factual determination that Brandon Homes had violated the terms of the agreement, giving the Heaths cause to terminate it. Where the trial court has not committed manifest error in its reasonable findings of fact, we will not substitute our judgment and we conclude that the findings of fact made by the trial court were not clearly wrong.
Nor do we believe the trial court erred in determining that the Heaths had not breached the agreement. Primarily, Brandon Homes submits that the Heaths breached the construction agreement in failing to timely pay various draws.
*1267 The agreement sets out precise times when the Heaths were required to pay draws to Brandon Homes, which times were contingent on specific work being completed. Besides setting out when the draws were due to Brandon Homes, the agreement also states in section 3 as follows:
(b) Subject to 3(d) herein, all payments shall be due within Three (3) business days of oral or written notification to the Owner by the Contractor that the required work or event necessary for a given draw has been completed or has occurred. Owner shall have the right to inspect the work to verify the facts stated in such notice.
. . . .
(d) Notwithstanding the stipulated Payment Schedule, the Owner may withhold any payment which may be necessary in the Owner's reasonable discretion to protect the Owner from loss because of:
(i) Defective work not remedied;
(ii) Third party claims filed, or reasonable evidence indicating a probability of failing (sic) of such claims; and
(iii) Other defaults by Contractor under the provisions of this Agreement. (Emphasis added).
Brandon Homes argues on appeal that the Heaths breached the agreement by delaying payments to it. Clearly, the agreement provides that the draws to be paid to Brandon Homes were contingent upon certain events happening and that the Heaths had the right to verify that such events had occurred. The Heaths also had the right to delay payment if they had a reasonable belief that the suppliers or subcontractors had not been paid. The trial court considered the evidence at trial and determined that the Heaths properly "sought to inspect the work to verify that it had been done prior to paying any draw request made by Brandon Homes."
At trial, Mrs. Heath freely admitted that the draws had not been paid immediately (or within three days of Brandon Homes' request for payment), but she further explained that the payments were delayed because she and her husband did not believe that the triggering events stated in the agreement had occurred. She further stated that Shifflett never produced lien releases to show that the subcontractors and suppliers had been paid, although she repeatedly asked for them. Her repeated requests for lien releases were obviously valid, considering the number of liens placed on the house soon after Brandon Homes was terminated. It appears from the record that the Heaths were within the terms of the agreement in making their payments to Brandon Homes.
In brief, Brandon Homes points to other facts which allegedly show that the Heaths breached the agreement. However, it fails to state which specific provision of the agreement was breached by the Heaths, except to argue that the Heaths "created considerable problems and difficulty for Brandon Homes on the job." The agreement does not state explicitly the duties or obligations of the Heaths to Brandon Homes, other than those terms regarding payments. Notably, as admitted by Shifflett, the agreement was prepared and provided by Brandon Homes, a fact upon which the trial court placed proper significance. Any doubt or ambiguity as to the meaning of a contract is resolved by interpreting the contract against the party who prepared it. Ouachita Nat. Bank in Monroe v. Williamson, 338 So.2d 172 (La. App. 2d Cir.1976); see also, La. C.C. art. 2056. None of the facts pointed to by Brandon Homes show that the Heaths breached a particular provision of the agreement. Therefore, the trial court did *1268 not err in finding that the Heaths had not breached the agreement. Additionally, our determination that the trial court did not err on this issue pretermits our addressing whether Brandon Homes was entitled to damages for the Heaths' alleged breach.

Nonpecuniary Damages
Brandon Homes appeals the trial court's award of nonpecuniary damages to the Heathsboth the validity of such an award and the amount. As stated, the Heaths have answered the appeal, and argue that the trial court award was insufficient.
Regarding damages for nonpecuniary loss, La. C.C. art.1998 provides:
Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.
If the obligee can show that he intended to gratify a significant and nonpecuniary interest by way of the contract, and the nature of the contract supports his contention, and that the obligor either knew or should have known that failure to perform would cause nonpecuniary loss to the obligee, then nonpecuniary damages may be recovered. Young v. Ford Motor Company, 595 So.2d 1123 (La.1992); Stonecipher v. Mitchell, 26,575 (La.App.2d Cir. 05/10/95), 655 So.2d 1381.
Whether the gratification of some nonpecuniary interest is a principal object of the contract is a question of fact. Jackson v. Lare, 34,124 (La.App.2d Cir. 11/01/00), 779 So.2d 808. This court has previously determined that a plaintiff could have a significant nonpecuniary interest sought to be fulfilled by contracting for the construction of a house. Stonecipher, supra at 1385. When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of those damages. La. C.C. art.1999; Stonecipher, supra.
In this case, Mrs. Heath testified that the house was her "dream home," on which she had been planning and working for approximately ten years. She testified that she and her husband had purchased the lot, which she considered had the most beautiful view of Cross Lake, some years before. Mrs. Heath further testified that her husband suffered from cancer and that she believed he would greatly enjoy living on the lake. Finally, Mrs. Heath noted that the house had been made handicapped accessible to accommodate Mr. Heath's illness.
Mr. Heath's testimony supported that of his wife. He agreed that the house was their "dream home" and indicated that he had always wanted to live on the waterfront. Mr. Heath further testified that Shifflett was aware the house was extremely important to he and Mrs. Heath and that Shifflett specifically knew about Mr. Heath's serious health problems, which should have been apparent considering the special modifications to make the house handicapped accessible.
At trial, Shifflett agreed that he had knowledge of Mr. Heath's serious health condition; however, he stated that he had no knowledge that the house was any more important to the Heaths than it would be for any other person.
*1269 A review of the record supports the trial court's finding that the Heaths certainly had a significant nonpecuniary interest which they sought to fulfill in building this particular house. Considering Mr. Heath's serious health condition and the modifications made to the house to accommodate same, along with the intense interest the Heaths had in the building of the house, it is reasonable for the trial court to have determined that Brandon Homes, through Shifflett, should have known of this interest. Such findings were not manifestly erroneous and the award of nonpecuniary damages was proper.
Considering the Heaths' answer on appeal that the nonpecuniary award was insufficient, we recognize that the trier of fact is given much discretion in awarding such damages. The trial court's award does not appear to be a clear abuse of that discretion and we affirm the award of $10,000.00 each to Mr. and Mrs. Heath for their nonpecuniary damages.

Special Damages
In their answer to appeal, the Heaths also state that the trial court erred in its computation of the special damage award. In addition to the nonpecuniary damages, the trial court awarded the Heaths $46,015.69, which represented the total amount of the liens placed on the Heaths' home by subcontractors and suppliers, as determined by the trial court, along with the costs incurred by the Heaths in having those liens cancelled. The amount is broken down in the judgment by individual lienholder. The Heaths raise two issues regarding the computation of the special damages.
They state that the trial court erroneously listed in the judgment the amount payable to Hi-Tower Concrete Pumpers and Mississippi Materials Company d/b/a Louisiana Ready Mix (the "lienholder") to be $9,472.24, collectively.[3] However, the Heaths argue that the amount should have been $12,541.54, and point to their trial exhibit 19 to support this amount. A review of said exhibit shows that it contains an accounting of legal costs incurred by the Heaths in paying off all the lienholders which composite amount came to $12,541.54 in attorney fees, expenses and some lien payments. The record does not support their argument that this lienholder was paid a greater amount than that awarded by the trial court, and we find this argument to be without merit.[4]
Finally, the Heaths generally argue that the trial court erred in failing to award them the full amount of damages to which they were entitled. In its Oral Bench Ruling, the trial court noted that the Heaths had paid to Brandon Homes $129,807.28. The trial court also noted that:
In terms of itemizing damages, there is a figure which I think represents the total amount of money that the Heaths paid to Brandon Homes which is unaccounted for, and that is sixty-one thousand, six hundred twenty-three dollars, sixty-three cents [$61,623.63]. I believe that Mr. Shifflett and [Brandon Homes], because of their actions in this matter, are entitled to no profit whatsoever. They violated their own contract.
*1270 Despite this finding, the trial court awarded the Heaths only the amount of the liens and costs, i.e., $46,015.69.
The evidence supports the finding by the trial court that the Heaths had paid to Brandon Homes $129,807.28. Additionally, the evidence also supports the Heaths' contention and the trial court's finding that Brandon Homes was unable to account for $61,623.63. In fact, Brandon Homes' own financial records show that the Heaths had paid $129,807.28, and that the "accumulated monies paid out" were $68,183.65leaving the "unaccounted for" amount of $61,623.63. Although the trial court recognized this discrepancy in accounting, it did not award the entire "unaccounted for" amount to the Heaths.
Louisiana C.C. art. 2769 states:
If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.
Clearly, the Heaths did not get that for which they paid. They paid to Brandon Homes $129,807.28. Brandon Homes was able to account for $68,183.65, which leaves an unaccounted for balance of $61,623.63. In addition to the nonpecuniary damages, the trial court awarded the Heaths only $46,015.69, which represented the amounts paid to have the various liens cancelled (the amount of the liens plus the costs incurred in having the liens cancelled). Furthermore, La. C.C. art.1997 provides: "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." The trial court determined that Brandon Homes acted, through its president, Shifflett, in bad faith. Considering that Brandon Homes used funds collected from the Heaths to pay an unrelated corporate debt, failed to pay suppliers and subcontractors for work done, and then actively encouraged the suppliers and subcontractors to file liens, we do not believe this finding was in error. In light of Articles 2769 and 1997, the Heaths should have been awarded the amount of their total loss which would be the total "unaccounted for" amount of $61,623.63, plus, $7,457.25, the legal costs and fees incurred in cancelling the various liens.[5]
Moreover, we note that the award of attorney fees in this instance is only for those attorney fees and costs the Heaths incurred to cancel the various liens filed against their house due to the breach by Brandon Homes. Such was a loss suffered by the Heaths as a direct consequence of Brandon Homes' failure to perform. Thus, an award to the Heaths of the total "unaccounted for" amount plus the costs incurred by them to have the liens cancelled would be within the dictates of La. C.C. arts. 2769 and 1997.[6]
Therefore, we amend the trial court's judgment to award the Heaths special damages in the amount of $61,623.63, plus $7,457.25, the amount paid by the Heaths in legal costs and fees to have the liens cancelled.

CONCLUSION
For the reasons set forth above, we amend the judgment of the trial court to *1271 award the Heaths special damages in the sum of $61,623.62, plus $7,457.25 for legal costs and fees to cancel the liens. Further, we affirm that portion of the judgment awarding nonpecuniary damages of $10,000 each to Mr. and Mrs. Heath. Costs of this appeal are to be assessed to Brandon Homes, Inc.
JUDGMENT AMENDED, AND, AS AMENDED, AFFIRMED.
NOTES
[1] The Heaths subsequently dismissed their claims, without prejudice, against the Shiffletts.
[2] Notably, the agreement also states that Brandon Homes would provide the Heaths with lien waivers from all subcontractors and suppliers as requested.
[3] These two subcontractors have been listed together, although the record before us does not indicate precisely why.
[4] In fact, we cannot determine from the record before us how the trial court determined the amount due the lienholder to be $9,472.24, as the particular liens in evidence do not indicate that precise amount. However, Brandon Homes has not appealed the correctness of that particular award; thus, we need not address it on appeal.
[5] We derived this amount from plaintiff's exhibit 19, which is a composite of the costs and fees incurred by the Heaths, minus the actual amount of the liens paid by their attorney.
[6] The Heaths' argument that they are entitled to the "unaccounted for" amount of $61,623.63 plus the total lien amounts is flawed. Such an award would, in effect, result in the Heaths recovering the total lien amounts twice. The Heaths did receive, and thus were indebted for, the products and services represented by the various liens.