285 So.2d 349 (1973)
Allen J. WEBER
v.
Mr. and Mrs. Calvin C. McMILLAN et al.
No. 5764.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1973.
Rehearings Denied November 30, 1973.
Writs Refused January 25, 1974.
*350 George T. Oubre, Norco, for Allen J. Weber, plaintiff-appellee.
Ralph R. Miller, Norco, for Mr. and Mrs. Calvin C. McMillan, defendants-appellants.
Vial, Vial & Lemmon, Leon C. Vial, III, Hahnville, for Creole Corp., defendant-appellee.
Before GULOTTA, J., and GAUDIN and ZACCARIA, JJ. Pro Tem.
GULOTTA, Judge.
This is a suit by a sublessee (Weber) against a sublessor (Creole) and the lessor-owner (McMillan) of the premises seeking damages resulting from the padlocking of the premises by the owner without *351 resort to legal process. Weber also seeks damages from his lessor (Creole) for failure to maintain plaintiff's peaceful possession. From an award of $2,574.40 for loss of income and an award of $2,500.00 in general damages, the owner appeals. Weber answers the appeal seeking an increase in damages. Creole was not cast in judgment and does not appeal.
The facts are that Mr. and Mrs. Calvin McMillan are the owners of a building in which a Tastee-Freeze business is operated in Norco, Louisiana. The owner leased the property to the Creole Corporation who in turn leased it to Mr. and Mrs. Allen J. Weber. The term of the sublease was for two years (March 1, 1967 to February 28, 1969) with a three-year option to renew. The Webers successfully operated a small drive-in restaurant upon the premises for approximately eighteen months. During this period of time, the Webers and Mc-Millans had an ongoing dispute regarding items that the Webers were allowed to sell under the terms of the lease. The Mc-Millans owned and operated a restaurant across the street from the Tastee-Freeze and sought to limit the kind of foods which could be sold by the Webers in order to avoid business competition. On August 12, 1968, the McMillans, without obtaining a judgment of eviction or resorting to any prior legal procedures, went onto the leased premises and padlocked the building. Since that time, the Webers have not resumed the operation of the business.
Mr. Weber filed suit on September 3, 1968, alleging that because of the unlawful action of the McMillans, he is entitled to damages for loss of income, humiliation, and loss of equipment. In this suit, Weber named Creole Corporation as codefendant seeking recovery of damages for Creole's failure to maintain Weber's peaceful possession.
It has long been established in our law that a lessor has no right to take possession or in any way disturb the possession of the lessee without first resorting to judicial process. If the lessor should wrongfully dispossess the lessee, he commits a trespass and becomes liable to the lessee in damages. Waller & Edmonds v. Cockfield, 111 La. 595, 35 So. 778 (1904); Buchanan v. Daspit, 245 So.2d 506 (La. App. 3rd Cir. 1971).
There is an exception to these general rules which allows self-help by the lessor when the lessee has voluntarily abandoned the premises. Reed v. Walthers, 193 So. 253 (Orl.App.1940); Wolf v. Cuccia, 144 La. 336, 80 So. 581 (1919).
It is the contention of the Mc-Millans that Weber had legally abandoned the premises, and that his action in padlocking the premises was, therefore, justified. The trial judge properly rejected this contention.
While it is clear that Weber was absent from Norco and the Tastee-Freeze from time to time during the months immediately preceding the padlocking, the duration of his absence is not clear. Weber testified that he had been away from the business for a period of ten days, during which time he was in Texas. This testimony was corroborated by his father. On the other hand, Richard Bell, President of Creole Corporation, stated that he was unable to contact Weber throughout June and July of 1968; Bell further testified it was his understanding that Weber was selling cars in Austin, Texas, during this time. Mrs. Corinne McMillan stated that Weber was gone for at least two months preceding the incident of August 12.
Regardless of the length of Mr. Weber's absence, it is abundantly clear that at all times the Tastee-Freeze continued to be in operation. Arrangements were made by Weber for either his father or his wife to operate the business in his absence. There was no showing of any intent by Weber to abandon the leased premises or the operation of the business.
*352 The McMillans contend that the $2,574.00 award for loss of income was excessive and should be reduced. We do not agree. The trial judge apparently based the amount of this award on the testimony of Peter Thorpe, a Certified Public Accountant, who made an examination of the record of the business. Thorpe projected a net profit of $406.00 per month if there had been no interruption of the business operation. The trial judge then multiplied this figure by the number of months remaining under the lease and arrived at the amount awarded. This is a reasonable method of computation and conclusion to be drawn from the evidence. We note, however, that the trial judge made a mathematical error in his calculation. There were actually 6 and 19/31 months remaining on the lease,[1] instead of 6 and 12/30 months as mistakenly determined by the trial judge. The proper figure should, therefore, be $2,684.71 in damages for loss of income.
We find no merit to McMillan's argument that the expert upon whom the trial judge placed reliance was not qualified to project future income. Thorpe had considerable experience in estimating future income of businesses similar in nature to that conducted by the Webers.
Nor do we believe that the award of $2,500.00 in general damages was an excessive award. In cases such as this, where a lessor has taken the law into his own hands by resorting to an unlawful seizure of his tenant's premises, he commits a trespass, and award of general damages is justifiable. Lafleur v. Sylvester, 135 So. 2d 91 (La.App.3rd Cir. 1961); Bright v. Bell, 113 La. 1078, 37 So. 976 (1905).
Although the award of $2,500.00 is high, we are of the opinion that this award was not so excessive as to constitute an abuse of discretion by the trial judge.
But the McMillans point out that Weber failed to take any action to minimize his damages. This, according to McMillan, is a further reason for the reduction of the amount of the award. They argue that Louisiana law provides ample means by which Weber could have quickly gone into court and obtained an injunction restraining further interference of his possession.
This argument is without merit. It is true that the law requires a person injured by the wrongful act of another to mitigate his damages; it also requires him to resort to legal action in order to mitigate those damages. Gray v. State, Department of Highways, 250 La. 1045, 202 So.2d 24 (1967); Humphreys v. Bennett Oil Corp., 195 La. 531, 197 So. 222 (1940). However, in this case, plaintiff did take legal action soon after the trespass by the McMillans; he filed suit for damages within three weeks after the incident. Although the court in the above-cited cases noted that injunction was an available remedy, the decisions in those cases were not based upon the plaintiffs' failure to choose injunction as a more proper remedy, but upon the plaintiffs' failure to take any action at all until an unreasonable time had elapsed.
The law does not impose the burden upon an injured party to make a particular choice between two available legal remedies. In this case, plaintiff filed suit. We cannot say he was bound to seek an injunction as a wiser choice to a suit for damages. It is untenable to permit the wrongdoer to complain that he was damaged by the injured party's choice of remedy to correct the wrongdoing.
The McMillans contend finally that even if Weber is entitled to damages, his recovery should be limited to one-half of the total damages, since the community existing between Weber and his wife had been dissolved.
Suit for separation was filed on June 5, 1968. A judgment was rendered on September *353 9, 1968. Our law is clear that the effective date of the dissolution of a community is retroactive to the time of the filing of the petition for separation. LSA-R.C.C. arts. 123, 155. Talley v. Employers Mutual Liability Insurance Co., 181 So.2d 764 (La.App. 4th Cir. 1965).
In this case, the effective date of the dissolution of the community is June 5, 1968, prior to the date that the Tastee-Freeze was padlocked.
Ordinarily, in such instance, a husband can only assert his right to recovery but has no right to assert his judicially separated wife's cause of action for damages sustained. The wife is relegated to filing her own suit to protect her interest. The husband then would be entitled to recover for only one-half of the damages incurred. However, in this instance, in the settlement of the community property between the Webers, both parties agreed in writing that Mrs. Weber is to receive one-half of "the proceeds of the sale of the business known as the Tastee-Freeze, Norco, Louisiana, and/or one-half of the damages recovered as a result of litigation pending against Corinne McMillan." We are squarely presented with the question of the effect this agreement has on the quantum of the award. To put it another way, is Weber entitled to a judgment for only one-half of the entire amount of the award?
We can see no difference between the effect of this agreement between Weber and his judicially separated wife and the effect of any agreement by which a person might assign a right of action to another party, as, for example, when an insured assigns his right of subrogation to his insurer. By the agreement, Mrs. Weber has conferred upon Mr. Weber the right to assert his claim for damages. It then logically follows that Weber has the right to assert the assigned right of his judicially separated wife. The agreement is, therefore, binding in this instance, and Weber is entitled to a judgment for the full amount of the award. The wife, then, is relegated to collection against Weber for one-half of the amount of the award.

Weber's Claim Against Creole Corporation
One of the two remaining questions requiring resolution is Weber's action against Creole, the sublessor. This suit is based upon Creole's alleged failure to maintain Weber's peaceful possession.
Creole's responsibility to Weber is set out in LSA-C.C. art. 2692(3)[2] and LSA-C.C. art. 2696,[3] i. e., to maintain peaceful possession against those who claim a right to the premises (McMillan). This, Creole plainly failed to do. To the contrary, in Creole's pleadings, they assert that Weber breached the lease. At no time did they defend Weber's possession. Creole Corporation must stand in judgment along with the McMillans to the extent of the damage sustained by the Webers.
Are Creole and the McMillans severally liable and, as such, each responsible for the payment of the full amount of the judgment[4] or solidarily liable and, as *354 such, each liable to Weber for the entire amount with the one who is called upon to pay possessing a right of contribution from the other to the extent of one-half?[5] McMillan's liability is founded in tort (unlawful seizure). Creole's liability is founded in contract (failure to maintain peaceful possession). Clearly, they are not solidarily liable as joint tort feasors. Nor are we aware of any provision of law stipulating solidary liability in this instance.[6]
The codal provisions providing for several liability, then, are applicable. Creole and the McMillans are liable each for the full amount of the award. We are not called upon here to determine if Creole has a right of recovery against McMillan in the event Weber chooses to execute against Creole. Creole did not third-party Mc-Millan, nor was there a separate suit filed by Creole against McMillan which might have been consolidated with the instant litigation. This issue, then, is not before us.
Accordingly, the judgment dismissing Weber's action against Creole is reversed. That part of the judgment casting Mc-Millan is affirmed. Judgment is now rendered in favor of Allen J. Weber and against Creole Corporation and Mr. and Mrs. Calvin C. McMillan in the amended sum of $2,684.71 for loss of income and $2,500.00 in general damages (as determined by the trial judge) with interest thereon from date of judicial demand until paid. Costs are to be divided equally between Creole and McMillan.
Affirmed in part; reversed in part.
NOTES
[1] The business was padlocked on August 12, 1968. The lease terminated on February 28, 1969.
[2] LSA-C.C. art. 2692(3) reads as follows:

"The lessor is bound from the very nature of the contract, and without any clause to that effect:
* * * * * *
"3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease."
[3] LSA-C.C. art. 2696 reads as follows:

"If the lessee be evicted, the lessor is answerable for the damage and loss which he sustained by the interruption of the lease."
[4] LSA-C.C. art. 2078 reads as follows:

"Several obligations are produced, when what is promised by one of the obligors, is not promised by the other, but each one promises separately for himself to do a distinct act; such obligations, although they may be contained in the same contract, are considered as much individual and distinct as if they had been in different contracts, and made at different times."
and LSA-C.C. art. 2079 reads:
"In like manner, a contract may contain distinct obligations to perform different things in favor of several persons; the obligations in this case are several and unconnected, and each obligee has his separate and distinct remedy on the obligation created towards him individually."
[5] LSA-C.C. art. 2103 reads as follows:

"The obligation contracted in solido towards the creditor, is of right divided amongst the debtors, who, amongst themselves, are liable each only for his part and portion." (emphasis theirs)
and LSA-C.C. art. 2104 reads:
"If one of the codebtors in solido pays the whole debt, he can claim from the others no more than the part and portion of each."
"If one of them be insolvent, the loss occasioned by his insolvency must be equally shared amongst all the other solvent codebtors and him who has made the payment." (emphasis theirs)
[6] LSA-C.C. art. 2093 reads as follows:

"An obligation in solido is not presumed; it must be expressly stipulated.
"This rule ceases to prevail only in cases where an obligation in solido takes place of right by virtue of some provisions of the law."