348 So.2d 993 (1977)
BUNEL OF NEW ORLEANS, INC.
v.
Elton A. CIGALI.
No. 7757.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1977.
Rehearing Denied August 1, 1977.
Writ Refused October 26, 1977.
Walter R. Fitzpatrick, Jr., New Orleans, for defendant-appellee.
Montgomery, Barnett, Brown & Read, Patrick J. Browne, DeVerges & DeVerges, *994 Edward J. DeVerges, Jr., New Orleans, for plaintiff-appellant.
Before SAMUEL, BOUTALL and MORIAL, JJ.
SAMUEL, Judge.
Plaintiff, a lessee, filed this suit against its lessor seeking damages for alleged wrongful eviction and wrongful cancellation of the lease of a portion of a building in the City of New Orleans. Part of plaintiff's cause of action involves its inability to recover a $30,000 unpaid balance for the sale of a business located at the leased premises on the ground that defendant induced plaintiff's sublessee to abandon the premises and relinquish rights under the sublease. Defendant answered, denying plaintiff's allegations, and filed a reconventional demand for three months' unpaid rent totaling $3,600, and $1,200 in construction cost.
After a trial on the merits, there was judgment dismissing plaintiff's suit and awarding defendant $3,600 on his reconventional demand. Plaintiff has appealed.
The lease was executed April 23, 1971 between defendant as lessor and Jack Bunel, individually, as lessee. The plaintiff corporation was substituted as lessee without defendant's approval, but subsequently that substitution was ratified by him. The lease prohibited subleasing without written approval by the lessor.
The lease is a renegotiation of a previous lease executed in 1969 when, as part of the same transaction, the plaintiff corporation purchased a restaurant business operated in the leased premises. After renegotiation of the lease in 1971, plaintiff contracted for leasehold improvements to be amortized over the term of the lease. He continued to operate a restaurant in the premises.
In December, 1971 plaintiff, through its agent, James C. Migliacco, negotiated a sublease of the premises with a corporation called Blue Eyes, Inc. Plaintiff sought defendant's consent for the sublease, and by letter of December 22, 1971, defendant gave limited permission to sublease upon condition that if the premises be subleased to a corporation instead of an individual "there must be obtained in writing a surety agreement whereby the stockholders and owners of that corporation personally agree to discharge the obligations of the corporation as subtenant." The liability of plaintiff on the original lease remained unaltered.
In connection with the sublease, plaintiff sold its restaurant business to Blue Eyes, Inc. The terms of sale were $2,000 cash, with a balance of $30,000 payable over a five-year lease term.
The evidence indicates plaintiff represented to defendant the premises would be subleased to an individual, James C. Migliacco, but nevertheless, the sublease was executed to the corporation, Blue Eyes, Inc. and neither plaintiff nor the sublessee furnished a surety agreement by the stockholders and owners of the sublessee corporation. The record shows the owner of Blue Eyes, Inc. refused to execute a surety agreement or personally bind himself.
The lease contains a provision setting forth grounds available to the lessor to cancel the lease and further provides that if these grounds or violations continue for a period of time after written notice has been given lessee, lessor has the right to declare the rent for the entire term of the lease due and demand the entire rental for the term of the lease, to declare the lease immediately cancelled, or to proceed for past due installments, without the necessity of putting lessee in default. The lease was on a standard printed form, and the blank providing for the number of days notice to be given by the lessor was not filled in.
In early 1972 plaintiff discovered the sublessee had vacated the premises, and learned defendant had leased the premises to another tenant in February, 1972. Plaintiff bases its suit upon failure of defendant to afford it written notice of cancellation of the lease and upon defendant retaking *995 physical occupancy of the premises without resort to judicial eviction procedure.[1]
No payments were ever received or accepted by defendant from the sublessee. Moreover, the contents of the leased premises were removed by persons other than the lessor, presumably creditors of the subtenant.
Plaintiff's representative, Jack Bunel, denies receipt of any notice of cancellation of the lease by defendant. Defendant introduced evidence of at least five notices or attempts to give notice. The first was on January 12, 1972 when defendant's attorney wrote to Blue Eyes, Inc., through Migliacco, stating defendant's refusal to honor the sublease to a corporation and demanding that Migliacco execute the necessary documents to bind him personally for the rental payments. The letter was returned unopened to defendant's attorney marked "Addressee Unknown", and defendant's attorney later delivered it by hand to Migliacco.
The second, on January 14, 1972, when defendant's attorney notified Bunel by mail that the original lease had been violated by non-compliance with the conditions imposed upon the right to sublease.
Third, on January 20, 1972, when defendant's attorney again notified Bunel by mail that the lease had been violated, the rent was unpaid and eviction would follow if the rent was not paid and the violation removed within five days. The letter further advised Bunel that the sublessee intended to leave the premises, which would be considered an abandonment in the absence of Bunel's contacting defendant. Testimony of defendant's attorney establishes neither the letter of January 14, nor the letter of January 20, 1972 were ever returned to him.
Fourth, when on advice of counsel, defendant caused a five-day Notice to Vacate to be placed on the door of the premises. The notice was addressed to Bunel of New Orleans, Inc., Migliacco, and occupants of the premises and notified them to vacate for nonpayment of rent. No response was made to this notice.
Fifth, when A. J. Cigali, agent for defendant, telephoned Bunel's residence and corporate domicile of Bunel of New Orleans, Inc., and communicated to Mrs. Bunel that the lease had been violated. Evidence indicates no response was made to these calls. Bunel did not deny the calls and he did not call his wife as a witness.
Shortly thereafter, the leased premises were emptied of their contents by plaintiff or parties other than defendant. Because the premises had been vacated and because he had no response to his letters or notices, defendant concluded plaintiff had either vacated in accordance with the posted notice or abandoned the property. Thereafter, defendant reentered the property, caused it to be refurbished, and in February, 1972, leased to another tenant. Approximately six months later, plaintiff filed this suit.
The evidence regarding notice by defendant to plaintiff is contradictory. The trial judge obviously believed defendant's evidence and concluded as a matter of fact that notice had been given plaintiff. There is insufficient evidence in the record to overturn this finding by the trial judge, and the legal issues presented by the parties must be determined on the basis that adequate notice was given.
The general rule set forth in the jurisprudence is that a lessor has no right to take possession or in any way disturb the possession of the lessee without first resorting to judicial process. If the lessor wrongfully dispossesses his lessee, he thereby commits a trespass and becomes liable to the lessee in damages.[2]
An exception to the general rule allows the lessor to exercise self-help when the *996 lessee has voluntarily abandoned the premises.[3]
In addition, Article 4731, Louisiana Code of Civil Procedure, provides:

"If the lessee or occupant fails to comply with the notice required to vacate required under this Title, the lessor or owner, or agent thereof, may cause the lessee or occupant to be cited summarily by a court of competent jurisdiction to show cause why he should not be ordered to deliver possession of the premises to the lessor or owner." LSA-C.C.P. Art. 4731. (Emphasis ours).
Article 4731 clearly implies, in accordance with the rationale of the jurisprudence, there is no need for a summary eviction procedure when the lessee or occupant voluntarily leaves the leased premises.
The law requires actual eviction before a tenant may recover damages from his lessor.[4] When the rent is unpaid and lessee leaves the premises without action by the lessor, there is in fact an abandonment of the premises and the lessor's taking possession thereof does not constitute wrongful eviction.[5]
As found by the trial judge, the defendant lessor gave appropriate notice to both the plaintiff and the sublessee of his intention to effect an eviction. After these notices were given, defendant saw the premises were in fact empty. In the absence of a response to his notices, he was entitled to conclude plaintiff had either vacated the property pursuant to notice or had abandoned the premises.
Defendant did not padlock the premises or eject the occupants thereof in any way. He simply observed the property in an abandoned condition and took the necessary steps to prepare the property to lease again in order to minimize his damages from plaintiff's breach of the lease by non-payment of rent.
Plaintiff urges the trial court committed error by awarding defendant the sum of $3,600 on his reconventional demand for unpaid rent and other items. The monthly rental was $1,200, and defendant sought rent for January, February, and March, 1972 plus $1,200 for unpaid costs of renovation and attorney's fees.
Plaintiff argues, in effect, the trial judge made a wrongful award of three months' rent because the property was leased by defendant on February 20, 1972, thereby entitling defendant at most to one month's rent for January and 20 days rent for February. Counsel for defendant interprets the judgment in another manner, with corrected figures, as follows:

1) Rent for January, 1972 ...... $1,200.00
2) Rent for 20 days in February,
 1972 ..................... 827.59
3) Balance due by plaintiff for
 renovations he was obliged
 to pay .................. 1,200.00
4) Ten percent attorney's fees in
 accordance with the lease . 322.76
 _________
 TOTAL...................... $3,550.35.

Counsel for defendant suggests the trial judge simply rounded the figure off to an even $3,600.
Since defendant in fact rented the premises on February 20, 1972, he is not entitled to recover a full three months' rent. On the other hand, this court cannot presume the trial judge made such an unwarranted award, and the basic analysis of the judgment made by defendant is an interpretation which accommodates both the facts of the case and the judgment of the court. However, we do not think the sum of $49.65 is small enough to allow the trial judge to round off the figure to $3,600, and the judgment on defendant's reconventional demand must be reduced accordingly.
For the reasons assigned, the judgment appealed from is amended by reducing the sum awarded defendant on his reconventional demand from $3,600 to $3,550.35. As thus amended, and in all other respects, the judgment is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] Plaintiff relies on Code of Civil Procedure Articles 4701, 4703, 4731 and 4732.
[2] Waller & Edmonds v. Cockfield, 111 La. 595, 35 So. 778; Weber v. McMillan, La.App., 285 So.2d 349; Buchanan v. Daspit, La.App., 245 So.2d 506.
[3] Wolf v. Cuccia, 144 La. 336, 80 So. 581; Reed v. Walthers, La.App., 193 So. 253. See also Weber v. McMillan, supra, note 2.
[4] Gibbs v. Stanfill, La.App., 146 So.2d 418.
[5] Reed v. Walthers, supra, note 2.