## STATE OF FLORIDA v. BLACKWELL
### Case Nos. 77-26908 and 81-3120
Eleventh Judicial Circuit, Dade County

May 9, 1985

### APPEARANCES OF COUNSEL

Office of State Attorney for plaintiff.
Office of Public Defender for defendant.

### OPINION OF THE COURT

PHILIP BLOOM, Circuit Judge.

This matter duly came before the Court on two Affidavits of Violation of Probation filed against defendant and Probationer Otis Blackwell, a/k/a Ronnie Pettigrew, in Case Nos. 77-26908 and 81-3120. The only allegation germane here from those Affidavits is that on or about December 19, 1983, Probationer Otis Blackwell, committed the offense of dealing in stolen property in violation of Florida Statutes. The Court takes judicial notice of the two identical (as to language) Orders Granting Probation and Fixing Terms Thereof dated May 14, 1979 and May 4, 1981 (hereinafter called "Orders") which Orders as of the dates of the Affidavits are in full force and effect, and that the Defendant was on probation in a 1976 case as well.

Provision (4) of the Orders which Probationer Blackwell knew or should have known, states the following:

"You will live and remain at liberty without violating any law. A conviction in a court of law shall not be necessary in order for such a violation to constitute a violation of your probation."

An Information as Case No. 84-17310 was filed against Norman Lorenzo Barber, a/k/a "Bo", and Otis Blackwell, a/k/a "Tease", on July 28, 1984, charging defendants Barber and Blackwell with trafficking or endeavoring to traffic in property that they knew or should have known was stolen, to wit dental equipment and various items of office equipment.

The issue for this Court to determine at this hearing is whether the Probationer Blackwell knew or should have known that the property placed in his automobile was stolen and whether Probationer thereby violated a condition of his probation, namely not to violate any law. The standard here is not proof beyond a reasonable doubt, but rather, whether the conscience of the Court is satisfied as to whether that condition of the probation has been violated. *Brill v. State*, 32 So.2d 607 (1947); *Randolph v. State*, 292 So.2d 374 (Fla. 3rd DCA 1974).

## FINDINGS OF FACT

The Court saw various witnesses as they testified, observed their demeanor, and adjudged their credibility. The Court, in the presence of the litigants and their attorneys, also viewed during the hearing a video tape admitted into evidence without objection, of the subject transaction filmed in its entirety within a building known as B & T Trading warehouse.

Accordingly, based on the hearing, the testimony, and other evidence properly before the Court, the Court made the following findings of fact:

1. That Probationer at the inception of the subject transaction, did not know that he was going to participate in an illegal transaction, to wit the sale of stolen property.

2. That Probationer innocently transported co-defendant Norman Barber and another person known as "Cap" together with some property placed in the trunk of Probationer's automobile with his consent but at a time when Probationer was not present, to a warehouse known as B & T Trading.

3. Unbeknownst to Probationer and his two acquaintances, the warehouse was operated by undercover policemen who had set up the

64

warehouse and were involved thereafter in approximately 700 purchases similar to that in the instant case.

4. The subject transaction involving Probationer and co-defendant Barber was recorded on video tape, was admitted into evidence and "played" before the Court as evidence in the case.

5. The stolen property consisted of dental equipment not ordinarily used by non-dentists and some general office equipment not ordinarily used by Probationer or his acquaintances.

6. The "warehouse" had the usual type outer bay area door of rippled or corrugated metal. Probationer was requested to back his car into the warehouse, at which time the "front" bay door was closed and Probationer, the co-defendant, "Cap", and the Probationer's car were enclosed in the warehouse without easy exit therefrom.

7. That once inside the warehouse, Probationer perceived a sinister atmosphere which included a machine gun mounted on the wall and other indicia sufficient to alert him that he was in a "hot" area, possibly reeking of illegality.

8. That the two acquaintances (not Probationer) removed the stolen property from the trunk of Probationer's automobile, but Probationer did not touch the property. At this point, Probationer knew or should have known that the two acquaintances were dealing in stolen property and Probationer "admitted" in his testimony that understanding.

9. Probationer testified that once "inside" the warehouse, he was frightened, nervous and scared, and to conceal his feelings, Probationer introduced himself not by his name, but by his street name, "Tease"; he joked about stolen dental equipment; and he conversed as to whether the undercover policemen also bought credit cards. From a viewing of the video tape, Petitioner also smiled and appeared relaxed which, according to Probationer, was to hide his true feelings while in the warehouse.

10. When the property was turned over to the undercover policemen, co-defendant Barber was paid by them and Barber then turned some of that money (the exact amount being unknown) over to Probationer.

11. Probationer raised the issue of "duress" being present while Probationer was in the warehouse, so as to condone his conduct while there; but the Court cannot find such duress. Instead, the Court finds sufficient surroundings in the warehouse to create in behalf of Probationer an atmosphere of "intimidation" or of great apprehension sufficient to negate a totally voluntary response on his part.

12. Co-defendant Barber previously pleaded guilty to dealing in

stolen property and after being transported from another jail, he testified in behalf of Petitioner Blackwell at this hearing. Barber testified that Probationer Blackwell had no part in the trafficking or sale of the stole property and that Probationer did not see any of the stolen property until all of the persons, including Blackwell, were inside the warehouse of B & T Trading.

13. Once inside the B & T warehouse, Probationer did not return or offer to return the money to co-defendant Barber or to anyone else, and there is no evidence that Probationer renounced at any time the transaction or any participation therein, except Probationer did not again visit or deal with B & T Trading or with Mr. Barber.

## FINDINGS OF FACT

The Court does not view the facts naively. While it is true that there is in evidence a video tape showing Probationer in the B & T warehouse at the time the transaction is taking place and that Probationer is receiving some money from the co-defendant, there is no other evidence to counter-act the version of the events just prior to driving into the B & T Trading warehouse as attested to by both the Probationer and Mr. Barber. Where, as in the instant case, the prosecution attempts to prove the element of felonious intent imputed to Probationer at the inception of the transaction by the evidence of the video tape revealing Probationer in the closed warehouse and of Probationer's receipt of money while in the warehouse, such proof must not only be consistent with guilt, but also inconsistent with any other reasonable hypothesis of innocence. That exclusion does not here exist.

The Court in order to satisfy its conscience as to whether a probation violation was proven here as a result of the "proof" of the substantive case against Blackwell, consulted other similar type cases. See, for example, *Chamberland v. State*, 429 So.2d 842 (Fla. 3rd DCA 1983); *J.L.J. v. State*, 367 So.2d 699 (Fla. 2d DCA 1979); *Newberry v. State*, 442 So.2d 334 (Fla. 5th DCA 1983); *Gellman v. State*, 371 So.2d 181 (Fla. 3rd DCA 1979); *Jackson v. State*, 436 So.2d 1085 (Fla. 3rd DCA 1983); and *Stuckey v. State*, 414 So.2d 1160 (Fla. 3rd DCA 1982).

The case of *Jackson v. State, supra*, is particularly interesting with respect to the case at hand. There, Judge Pearson, states the following:

"Evidence that (a) the victim of a purse snatching, committed by a person other than the defendant, saw Jackson [defendant] emerging from an automobile which the victim had followed from the vicinity

of the scene of the robbery; (b) the spoils of the robbery were found in the automobile occupied by Jackson and the perpetrator of the robbery; and (c) Jackson fled from the scene of the robbery; even if arguably supporting inferences that Jackson had driven the perpetrator to and from the scene and had after-the-fact knowledge of the robbery, *is insufficient to prove that Jackson knew beforehand of his companion's intentions, much less that he had a prior intention to participate in the offense,* and manifestly does not support Jackson's conviction for aiding and abetting in the commission of the robbery." (Emphasis added at P. 1086)

See also *Stuckey v. State, supra,* wherein that Court held that the circumstantial evidence failed to establish beyond a reasonable doubt (admittedly a "higher" standard than here) that defendant had specific intent to participate as an aider and abettor in the crime charged:

"Although his conduct in driving the actual perpetrator to and from the scene of the shoplifting, Perez v. State, 290 So.2d 85 (Fla. 3rd DCA 1980); Pack v. State, supra, in combination with other questionable after-the-fact behavior, J.O. v. State, 348 So.2d 996 (Fla. 3rd DCA 1980) and cases cited, might be suggestive of guilt, *such evidence is insufficient to exclude a reasonable hypothesis of innocence generated by defendant's explanation of his presence at the time and place of the commission of the crime."* (Emphasis added at P. 1161)

As a result of a reading of the foregoing cases as well as Sections 910-920 of 15 Fla. Jur. 2d as to the standards of proof to be applied in a probation violation case, the Court is unable to conclude that Blackwell knew at the inception of the transaction that he would be transporting and dealing in stolen property and that is so even with the "lesser" standard of proof necessary in a probation violation case. Accordingly, the conscience of the Court is not satisfied that Probationer Blackwell violated his probation.

Based on the foregoing, it is hereupon ORDERED AND ADJUDGED as follows:

1. That Probationer Otis Blackwell is found *not guilty* of the alleged probation violation;

2. That Probationer Otis Blackwell is restored to his former probation status; and

3. That Probationer Otis Blackwell is hereby directed to complete his probation in accordance with all the terms and conditions thereof, including being at liberty "without violating any law."