STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-559


PLATINUM CITY, L.L.C.

VERSUS

ALLEN L. BOUDREAUX


********** 

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2008-2773
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Marc T. Amy, Judges.


REVERSED IN PART, AMENDED IN PART, AFFIRMED IN PART, AND
RENDERED.



Winfield Earl Little, Jr.
Attorney at Law
P. O. Box 3759
Lake Charles, LA 70601
(337) 430-0907
Counsel for Defendant Appellee:
Allen L. Boudreaux

**Jermaine D. Williams**
**Attorney at Law**
**108 W. Congress Street**
**Lafayette, LA 70501**
**(337) 235-3989**
**Counsel for Plaintiff Appellant:**
**Platinum City, L.L.C.**

**SAUNDERS, J.**

This appeal arises from the trial court's judgment in favor of the landlord against the tenant whereby the trial court found that the tenant owed the landlord compensation for past due rent and late penalties. The trial court also dismissed all claims the tenant brought against the landlord, including a claim of wrongful eviction. It is from this judgment that the tenant appeals. For the reasons stated herein, we reverse in part, amend in part, affirm in part, and render.

**FACTS AND PROCEDURAL HISTORY**

This case arises from a lease agreement in which Allen Boudreaux (hereinafter "Boudreaux") agreed to lease a building to Platinum City, L.L.C. (hereinafter "Platinum City") to be used as a nightclub. Boudreaux and Platinum City entered into a lease contract on or about October 31, 2006. The contract provided that Platinum City would rent the property at 3434 East Prien Lake Road in Lake Charles, Louisiana, from November 2, 2006 until December 31, 2007. The contract also provided that the first month's rent would be free, and subsequent payments were to be made at a monthly rate of $4,000 per month, with a ten percent (10%) penalty for late payments. Further, the lease warranted that the property was in "good condition" and required Platinum City to maintain a specified amount of liability insurance coverage on the building for the duration of the lease. The parties also agreed that at the expiration of the original term of the lease, Platinum City was to have an option to renew the lease for an additional one year, on the condition that Platinum City was not in default of the terms of the lease.

At the expiration of the original lease agreement, in January 2008, the parties agreed to enter into a new lease agreement under the same terms as the original lease for one year. Boudreaux and Platinum City entered into this new

lease agreement despite the fact that Platinum City had not made a rental payment for December 2007. Jermaine D. Williams (hereinafter "Williams"), the sole owner and shareholder of Platinum City, issued a check, dated January 4, 2008, to Boudreaux in the amount of $8,000 to satisfy both the December 2007 rental payment due pursuant to the original lease and the January 2008 rental payment due under the new lease. At the time of issuance, Williams stated to Boudreaux that Platinum City did not have the funds with which to honor the January 4, 2008 check, but would have them available shortly. Boudreaux deposited the check on January 20, 2008, but the issuing bank returned it to him marked "nonsufficient funds."

Boudreaux, on January 29, 2008, faxed Williams and Platinum City a letter containing a notice of termination of the lease for nonpayment of rent and a demand to surrender possession of the property. The next day, January 30, 2008, Boudreaux caused Williams and Platinum City to be cited with a Five Day Notice from the Lake Charles City Court. Williams received the January 29, 2008 letter but denies being served with the January 30, 2008 court document. Boudreaux also forwarded the nonsufficient funds check to the Office of the District Attorney of Iberia Parish, which instituted prosecution against Williams for issuing a worthless check.

After receiving the notice of cancellation, Platinum City continued possession of the property and operated the nightclub until March 4, 2008, when Boudreaux terminated Williams's access to the building. In response, Platinum City brought this action against Boudreaux alleging breach of contract due to the property's failure to be in "good condition," as warranted in the lease agreement,

2

and alleging wrongful eviction resulting in loss of equipment and lost profits.[1] Boudreaux then brought an action in reconvention against Platinum City for nonpayment of rent and late penalties.

On the trial date, Boudreaux raised the exception of no right of action, alleging that since Platinum City is no longer an entity, it can no longer pursue its claims. The court, taking judicial notice of Platinum City's nonexistence, evidenced by the website of the Secretary of State of Louisiana, granted the exception. The court then allowed Williams to amend the original petition, substituting himself as the plaintiff in the current action.

The trial court entered a judgment against Williams, dismissing all claims against Boudreaux. The judgment awarded Boudreaux $5,200 for late rental payments and $12,725 for attorney fees, plus all costs, to be paid by Williams. Williams appeals, asserting that the trial court erred by not finding that Boudreaux's actions constituted wrongful eviction. We reverse in part, amend in part, affirm in part, and render.

**ASSIGNMENT OF ERROR**

> 1. The trial court erroneously found that Platinum City was not Wrongfully Evicted.

**LAW AND ANALYSIS**

Williams contends in his assignment of error that the trial court erred in failing to find that Boudreaux wrongfully evicted him. "An appellate court cannot overturn the factual findings of a trial court unless the trial court committed manifest error, or unless the trial court made a legal error, such as applying the wrong statute or incorrectly applying an applicable statute." *Brunston v. Hoover*, 06-970, p. 3 (La. App. 3 Cir. 12/6/06), 945 So. 2d 852, 854. Here, the trial court

---

[1] The trial court rejected Williams's claim that Boudreaux failed to deliver the premises in good condition, and Williams did not raise that ruling as error on appeal.

applied La.Civ.Code arts. 2013 and 2014, general contract articles governing failure to perform and dissolution of contracts. While the trial court was correct in applying La.Civ.Code arts. 2013 and 2014, it is clear that this case also falls under La.Code Civ.P. arts. 4701, 4731, and 4733, the articles which govern eviction procedure. Accordingly, we find that the court erred as a matter of law by failing to apply the appropriate procedural provisions of the Louisiana Code of Civil Procedure. Since this case poses a question of law, the appropriate standard of review is *de novo*.

> [A]ppellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. If the trial court's decision was based on its erroneous interpretation or application of the law, rather than a valid exercise of discretion, such incorrect decision is not entitled to deference by the reviewing court.

*Conagra Poultry Co. v. Collingsworth,* 30,555 p. 2 (La.App. 2 Cir. 1/21/98), 705 So.2d 1280, 1281-82.

> While the trial court remains the original forum for resolving factual and legal issues, the Louisiana Constitution expressly extends the jurisdiction of appellate courts in civil cases to the review of facts as well as law. Accordingly, appellate courts render judgments on the merits when the trial court has made a consequential but erroneous ruling on the exclusion or admission of evidence. Likewise, when an appellate court has all the facts before it, a trial judge's erroneous instruction to the jury does not warrant a remand.
> In addition to the constitutional authority, and consistent with it, there is a very practical consideration which encourages our appellate courts to exercise their jurisdiction to review factual findings: judicial economy. When the entire record is before the appellate court, remand for a new trial produces delay of the final outcome and congestion of crowded dockets while adding little to the judicial determination process. Although the appellate court does not gain the benefit of personally viewing the witnesses, it does have a complete record and the constitutional authority to decide.

*Gonzales v. Xerox Corp.*, 320 So.2d 163, 165-66 (La.1975) (citations and footnote omitted).

In the case before us, the record is complete and a trial has occurred. As such, we will adjudicate the merits on this appeal.

**DISCUSSION OF THE MERITS**

**Wrongful Eviction**

The primary issue on appeal is whether Williams was wrongfully evicted. The eviction requirements with which a lessor must comply are, in pertinent part, as follows:

The first step in a proper eviction proceeding is for the lessor to give the lessee notice to vacate (emphasis added):

> When a lessee's right of occupancy has ceased because of the termination of the lease by expiration of its term, action by the lessor, nonpayment of rent, or for any other reason, and the lessor wishes to obtain possession of the premises, **the lessor or his agent shall cause written notice to vacate the premises to be delivered to the lessee. The notice shall allow the lessee not less than five days from the date of its delivery to vacate the leased premises.**
>
> If the lease has no definite term, the notice required by law for its termination shall be considered as a notice to vacate under this Article. If the lease has a definite term, notice to vacate may be given not more than thirty days before the expiration of the term.

La.Code Civ.P. art. 4701.

If the lessee does not vacate the leased premises within five days, the lessor must resort to judicial process before he can legally terminate the lessee's possession, with one exception, abandonment: "**Upon a lessee's failure to vacate the leased premises after receiving such notice, the lessor must proceed summarily to have the lessee evicted.**" *Bill Kassel Farms, Inc. v. Paul*, 96-462, p. 4 (La.App. 3 Cir. 12/11/96), 690 So.2d 807, 809, *writ denied*, 97-0712 (La. 4/25/97), 692 So.2d 1095 (emphasis added). This rule is further explained by Louisiana Civil Code Article 4731 (emphasis added):

> A**. If the lessee or occupant fails to comply with the notice to vacate required under this Title**, or if the lessee has waived his right to notice to vacate by written waiver contained in the lease, and has lost his right of occupancy for any reason, **the lessor or owner, or agent thereof, may cause the lessee or occupant to be cited summarily by a court of competent jurisdiction to show cause why he should not be ordered to deliver possession of the premises to**

>    **the lessor or owner.** The rule to show cause shall state the grounds
>    upon which eviction is sought.
>           B. After the required notice has been given, the lessor or owner,
>    or agent thereof, may lawfully take possession of the premises without
>    further judicial process, upon a reasonable belief that the lessee or
>    occupant has abandoned the premises. Indicia of abandonment include
>    a cessation of business activity or residential occupancy, returning
>    keys to the premises, and removal of equipment, furnishings, or other
>    movables from the premises.

La.Code Civ. P. art. 4731.

**"Thus, a notice to vacate in and of itself is only the initial stage in effectuating an eviction and it is upon lessee's failure to vacate the leased premises after receiving such notice that the lessor must proceed summarily to have the lessee evicted."** *Bill Kassel Farms, Inc.*, 690 So.2d at 809.

Finally, the last step in an eviction process is for the lessor to obtain a judgment of eviction, which then enables him to legally terminate the lessee's possession: "If the lessee or occupant does not comply with the judgment of eviction within twenty-four hours after its rendition, the court shall issue immediately a warrant directed to and commanding its sheriff, constable, or marshal to deliver possession of the premises to the lessor or owner." La.Code Civ.P. art. 4733. Moreover, "**[i]t has long been established in our law that a lessor has no right to take possession or in any way disturb the possession of the lessee without first resorting to judicial process.**" *Weber v. McMillan,* 285 So.2d 349, 351 (La.App. 4 Cir. 1973) (emphasis added).

The first step, then, in a proper eviction proceeding, is for the lessor to deliver to the lessee a notice to vacate, after which the lessor has five days to comply. La.Code Civ.P art. 4701. Williams contends that he was never served with a notice of termination or notice to vacate. We find that the evidence does not substantiate this contention. In the case before us, the record indicates that Boudreaux faxed Williams a letter, dated January 29, 2008, which Williams

received, that contained a notice of termination and a demand to vacate. We find that the letter constituted the requisite notice pursuant to La.Code Civ.P. art. 4701.

After receiving the notice of termination and demand to vacate, Williams failed to comply, remaining in possession of the leased premises. If the lessee fails to vacate, the lessor may cause the lessee to be cited summarily by a court of competent jurisdiction. La.Code Civ.P. art. 4731. The lessor must resort to the judicial process and must obtain a judgment of eviction in order to properly evict his tenant. *Pelleteri v. Caspian Group, Inc.*, 02-2141 (La.App. 4 Cir 7/2/03), 851 So.2d 1230; La.Code Civ.P. art. 4733. Here, the evidence shows that Boudreaux failed to initiate a proceeding against Williams in order to obtain a judgment of eviction. Instead, Boudreaux terminated Williams's access to the leased premises on March 4, 2008. Whitman Guillory (hereinafter "Guillory"), an associate of Williams, was present at the leased premises on the day Boudreaux evicted Williams. Guillory described the event as follows:

> Q. Okay. Do you remember a time when there were locks placed on—
> either placed on or attempted to be placed onto the doors over at 3434 East
> Prien Lake Road?
> A. Yes, sir.
> Q. Do you remember when that was?
> A. That was March—
> Q. Of—
> A. Of 2008.
> Q. –2008. Do you remember were locks actually placed on the doors?
> A. When I got there, they were changed, yes, sir.
> Q. Do you know who placed them on the doors?
> A. [Boudreaux] and one of his friends.
> . . . .
> Q. What did he indicate to you at that time?
> A. That the club was, I think, two months behind in rent; and, if we didn't
> have the rent, he was going to shut the doors on us.
> Q. Okay. And at that time did he demand a payment of you?
> A. Yes, sir.

This testimony detailing the details of eviction is uncontroverted by Boudreaux. Therefore, after reviewing the evidence, we find it clear from the

7

record that Boudreaux failed to obtain a judgment of eviction prior to terminating Williams's possession. Under Louisiana law, a lessor may not resort to self-help when seeking to evict his lessee. *Pelleteri*, 851 So.2d 1230. The one exception, abandonment, is not at issue. Therefore, we find that Williams was wrongfully evicted.

Williams, in his brief, also asserts that the eviction was wrongful, because Boudreaux refused to accept a rental payment. Because we have already found the eviction to be wrongful, this issue is moot.

**Consequences of Wrongful Eviction**

Now that we have found that Williams was wrongfully evicted, we turn to how this finding affects the trial court's judgment. The trial court awarded Boudreaux $5,200 in rental payments and late fees and $12,725 in attorney's fees.

*Damages*

We will first discuss the issue of damages due to Boudreaux. The $5,200 award represents rent for February of 2008 and late penalties for December 2007, January 2008, and February 2008 ($400 for each month). The record supports this monetary award for unpaid rent and late fees. For this reason, we affirm the judgment of the trial court insofar as the $5,200 in damages for rental payments and late fees.

Next, we will discuss the damages due to Williams as a result of the wrongful eviction. Williams requests that we remand this matter to address the amount of damages payable to him by Boudreaux. We deny this request. Having brought suit against Boudreaux and having been afforded a trial, Williams had his day in court and should not be given further opportunity. As such, we will decide the matter of wrongful eviction damages by reviewing the record before us.

Whether Williams is entitled to wrongful eviction damages is governed by the following: "If the lessor should wrongfully dispossess the lessee, he commits a trespass and becomes liable to the lessee in damages." *Weber,* 285 So.2d at 351. Furthermore, the plaintiff must allege damages to a certain degree of specificity:

> A court is not justified in fixing damages in the absence of definite proof. The plaintiff has the burden of proving the damage suffered by him as a result of the breach of contract. In a breach of contract action, the plaintiff is entitled to recover the amount of loss he has sustained and the profit of which he has been deprived. [La.Civ.Code] art.1934. While the absence of independent, corroborating evidence may not be fatal to the plaintiff's burden of proof, the lack of even a minimal degree of detail or specificity as to the extent of loss precludes an award. *Casadaban v. Bel Chemical & Supply Company, Inc.*, 322 So.2d 854 (La.App. 1 Cir. 1975). Speculation and conjecture cannot be accepted as a basis for fixing loss of earnings or profits. *Jones v. Rodgers*, 179 So.2d 674 (La.App. 2d Cir.1965).

*Campbell v. Lelong Trust*, 327 So.2d 533, 536 (La.App. 2 Cir. 1976), *writ denied*, 331 So.2d 494, 496 (La.1976).

In the case *sub judice*, the record reveals that Williams failed to prove with specificity damages in relation to the wrongful eviction. The record lacks evidence such as business records that would substantiate his claims of loss due to wrongful eviction. Since Williams has not carried his burden of proving damages with specificity, we conclude that he is not entitled to any damages for wrongful eviction.

*Attorney's Fees*

The next issue before us is whether Williams, as a pro se lawyer, is entitled to attorney's fees. In *Lambert v. Byron*, this Court expounded upon the rule governing such issues:

> [R]ecovery of attorney's fees is not available to one who represents himself because he has incurred no out-of-pocket expenses. Attorney's fees are awarded to a successful litigant so that his recovery might not be diminished by the expense of legal representation. To allow an attorney filing suit in proper person to recover attorney's fees when he has not actually incurred their

9

expense gives him a monetary advantage unavailable to anyone hiring counsel.

*Lambert v. Byron,* 94-854, p. 3 (La.App. 3 Cir. 2/8/95), 650 So.2d 1201, 1203. The law being clear on pro se attorneys, we find that Williams, as an attorney representing himself, is not entitled to attorney's fees.

The final issue in this case is that of the trial court's award of attorney's fees to Boudreaux.

> As a general rule, attorney's fees cannot be recovered unless expressly authorized by statute or contract. A suit for breach of contract is not an exception to the general rule.

*George v. Reliance Ins. Co.*, 03-379, p. 5 (La.App. 3 Cir. 10/1/03), 856 So.2d 1267, 1270 (citations omitted).

Review of the lease in this case indicates that there is a provision addressing recovery of attorney's fees. The provision states the following: "If an attorney is employed to protect any right of the LESSOR or LESSEE arising under this lease, the party whose fault necessitates such employment shall pay reasonable attorney's fees to the other." In its judgment, the trial court awarded Boudreaux $12,725 in attorney's fees, assessed to Williams. For the reasons discussed herein, we amend the award of attorney's fees to Boudreaux.

The issue of whether Boudreaux is entitled to attorney's fees is interwoven with the question of whether the eviction was wrongful. While it is true that the trial court found that Williams missed rental payments and ordered him to pay Boudreaux $5,200 in rental payments and late fees, Boudreaux was nonetheless unjustified in evicting Williams outside the permissible and proscribed procedures. This court believes that honesty, fairness and justice would preclude an award of attorney's fees to Boudreaux that would in effect have Williams pay for Boudreaux's defense of the wrongful eviction claim.

10

Since we have found the eviction to be wrongful, we believe that Boudreaux's award of attorney's fees should be adjusted to exclude those attorney's fees incurred in defense of the wrongful eviction. However, we find that Boudreaux is entitled to attorney's fees insofar as he was attempting to recover past due rent. The trial court's reasons for judgment suggests that Boudreaux's attorney was to attach a copy of his itemized statement to the judgment. Such a statement, however, is not in the record. Our review of the record suggests that an amount of $1,750 would be appropriate for the collection of $5,200 for past due rent. Accordingly, we amend the trial court's award for attorney's fees and affix the award at $1,750.

**CONCLUSION**

We find that Jermaine Williams was wrongfully evicted, because Allen Boudreaux terminated Williams's possession of the leased premises prior to obtaining a judgment of eviction. As such, we reverse the trial court's judgment dismissing Williams's wrongful eviction claim against Boudreaux. However, because Williams failed to prove with specificity damages he suffered as a result of the wrongful eviction, we find that Williams is not entitled to wrongful eviction damages. As for damages awarded to Boudreaux for rental payments and late fees, we affirm the judgment of the trial court's $5,200 award.

We also find that Boudreaux, who committed wrongful eviction, is not entitled to the trial court's award of $12,725 in attorney's fees. Thus, we amend the judgment of the trial court and award Boudreaux $1,750 in attorney's fees. Finally, we find that Williams, as a pro se attorney, is not entitled to attorney's fees. All costs are to be split between the parties.

> **REVERSED IN PART, AMENDED IN PART, AFFIRMED IN PART, AND RENDERED.**