STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-308


MARSHALL TROGLEN

VERSUS

HYDRAULIC WELL CONTROL, ET AL.


**********

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-18346
HONORABLE PENELOPE QUINN RICHARD, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Billy Howard Ezell, and J. David Painter, Judges.


AFFIRMED.

Louis Roy Koerner, Jr.
Koerner Law Firm
P. O. Box 4297
Houma, LA 70361-4297
(985) 580-0350
COUNSEL FOR PLAINTIFF/PPELLANT:
    Marshall Troglen

**R. Brent Cueria**
**Cueria Law Firm, LLC**
**700 Camp St., Suite 316**
**New Orleans, LA 70130**
**(504) 525-5211**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Marshall Troglen**

**Laurie Briggs Young**
**Adams and Reese**
**701 Poydras St., Suite 4500**
**New Orleans, LA 70139**
**(504) 581-3234**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Hydraulic Well Control**
    **Boots & Coots Services, LLC**

**SAUNDERS, Judge.**

This is a Jones Act case where a trial court found that the injured worker failed to carry his burden to prove that he is a seaman. As such, the trial court dismissed the injured workers' Jones Act claims against his employer.

The injured worker filed this appeal. He first argues that the trial court utilized the incorrect legal standard in reaching its determination that he failed to carry his burden of proof. Secondly, the injured worker alleges that he did carry his burden to prove that he was a Jones Act seaman.

## FACTS AND PROCEDURAL HISTORY:

Marshall Troglen (Troglen) began working for Hydraulic Well Control/Boot and Coots Services, L. L. C. (B&C) on June 12, 2008, in a land-based warehouse. Soon thereafter, Troglen expressed interest in offshore work.

B&C was hired by Nexen, an oil and gas company that develops energy resources, to restore its well located on a platform fixed to the outer continental shelf in the Gulf of Mexico. Troglen was assigned to work as a helper for this job by B&C.

On this particular job, B&C's employees, as well as other employees from different companies, ate, slept, and used the restroom facilities on the RAM VII. The RAM VII, a vessel, is a jack-up rig that was attached to the fixed platform by a gangway. One other vessel on this particular job was a supply boat that carried materials between the fixed platform and land. B&C had no contract with either vessel to provide these services. Presumably, these vessels, like B&C, were contracted by Nexen.

On August 14, 2008, Troglen was injured while working on the fixed platform. The injury occurred when an errant toss by his coemployee resulted in a

piece of Teflon striking Troglen in the face. The piece of Teflon was in the shape of a pipe and weighed approximately two-and-a-half pounds. Tossing the piece of Teflon was not proper protocol as delineated by B&C.

On December 29, 2008, Troglen filed a petition for damages against B&C. In that petition, he alleged entitlement to various compensation based on his status as a seaman under the Jones Act. In response, B&C filed a motion for summary judgment asserting that Troglen was not entitled to the compensation sought because he was not a seaman under the Jones Act. The trial court denied B&C's motion finding that a genuine issue of material fact existed on the issue.

On August 1, 2013, after conducting a trial on the merits, the trial court rendered and signed a judgment that Troglen failed to carry his burden to prove that he was a seaman under the Jones Act and, thus, dismissed his claims against B&C. Troglen filed a motion for new trial on August 12, 2013. His motion was denied via judgment signed on December 11, 2013. Troglen filed this appeal before us on December 19, 2013. In this appeal, Troglen raises two issues for review.

**ISSUES PRESENTED FOR REVIEW:**

1. The trial court erred by using an incorrect legal standard in its deliberation of whether Troglen was a seaman, thereby committing an error of law which necessitates a de novo review.

2. The trial court erred in holding that Troglen was not a seaman and, as such, erred by dismissing Troglen's claims under the Jones Act.

**ISSUE PRESENTED FOR REVIEW NUMBER ONE:**

Troglen contends that the trial court erred by using an incorrect legal standard in its deliberation of whether he was a seaman, thereby committing an

error of law which necessitates a de novo review. We do not find any merit to Troglen's contention.

Troglen's first issue raises a question of law because in it he asserts that the trial court incorrectly applied the standard created by the United States Supreme Court in *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172 (1995), to ascertain whether one is a "seaman" under the Jones Act. Appellate review of questions of law are de novo in deciding whether the court's decision below was based on an erroneous application or interpretation of the law. *Platinum City, L.L.C. v. Boudreaux*, (La.App. 3 Cir. 11/23/11), 81 So.3d 780 (citing *Conagra Poultry Co. v. Collingsworth*, 30,155 (La.App. 2 Cir. 1/21/98), 705 So.2d 1280).

Troglen writes in brief that "[t]he judgment by the district court and the facts on which it relied to conclude that Troglen was not a seaman are not entitled to the deferential manifest error standard of review, since the district court's conclusion was based on the application of incorrect principles of law." After this statement, in his summary of the argument, Troglen asserts that "'[t]ime spent in the service of vessels' and 'time actually physically spent on such vessels' have different legal significances not considered by the district court, who utilized the incorrect standard of time spent physically on vessels as compared to prior land or platform assignments not involving vessels." Thereafter, Troglen states that "[n]o legal standard required 50% physical presence on the RAM VII. The highest such standard is 30%."

Although Troglen does not directly state how he contends the trial court incorrectly applied the *Chandris* test, in reviewing his brief in its entirety, we are able to determine the basis for his contention. Troglen asserts that the trial court

incorrectly based its finding that he failed to carry his burden to prove that he was a Jones Act seaman solely upon how much time he physically spent on a vessel.

Our review of the record does not indicate that the trial court found Troglen was not a seaman solely because he was not physically working on the RAM VII 50% of the time. Rather, it is clear that the trial court determined that Troglen was not credible and, as such, it did not give credence to his assertion that he spent 50% of his time working on the RAM VII. The trial court then cited testimony contrary to Troglen's assertion that he spent 50% of his time physically on the RAM VII. After citing that testimony, the trial court went on to cite various facts that it found relevant to its determination, such as how much of the work performed by Troglen was done on the fixed platform, how much time was spent assisting third parties on the RAM VII, what the RAM VII was used for on the job, and how much time and how often Troglen went to the RAM VII during a shift or tour to retrieve items necessary for the performance of B&C's job.

Accordingly, we find no merit to Troglen's assertion that the trial court committed legal error by using an incorrect legal standard in its deliberation of whether he was a seaman. The trial court merely made a credibility determination to find, as fact, how much time Troglen physically spent on the RAM VII. This found fact was a relevant one in the application of the *Chandris* test, and there is no indication that the trial court used it as the sole factor for determining that Troglen failed to carry his burden to prove that he was a seaman.

**ISSUE PRESENTED FOR REVIEW NUMBER TWO:**

In his second issue presented for review, Troglen asserts that the trial court erred in holding that he was not a seaman and, as such, erred by dismissing his claims under the Jones Act. We do not agree.

4

The question of seaman status is a mixed question of law and fact. *Chandris*, 515 U.S. 347. When the interpretation of statutory terms are at issue, it is a question of law. *Id.* However, when the legal standard is property applied, a determination of who is a seaman is a question for the fact finder. *Id.*

Troglen does not allege an improper interpretation of statutory terms in this particular issue presented for review. Thus, as is typically the case in general maritime and Jones Act cases, the manifest error standard of review is applicable. *Coutee v. Global Marine Drilling Co.*, (La. 2/22/06), 924 So.2d 112.

The Jones Act grants a seaman a cause of action, yet does not define "seaman." Thus, the Jones Act "leaves to the courts the determination of exactly which maritime workers are entitled to admiralty's special protection." *Chandris, Inc. v. Latsis*, 515 U.S. at 355.

> The United States Supreme Court in *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172. . . (1995), set forth the elements for seaman status as follows: (1) the employee's duties must contribute to the function of the vessel or to the accomplishment of its mission; (2) a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. *See Chandris*, 515 U.S. at 368, 115 S.Ct. at 2190.

> The *Chandris* court explained that the first element was intended to exclude from Jones Act protection those individuals who do not perform the ship's work. The court recognized, however, that the threshold requirement is very broad, stating that "all who work at sea in the service of a ship" are eligible for seaman status. *See Id.*

> The second element, however, is a more narrow inquiry. The *Chandris* court explained the element as follows:

>> The fundamental purpose of the substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection with a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea. See 1B A.

5

Jenner, Benedict on Admiralty § 11a, pp. 2-10.1 to 2-11 (7th ed. 1994) ("If it can be shown that the employee performed a significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied" (footnote omitted)).

*Chandris*, 515 U.S. at 368-69, 115 S.Ct. at 2190.

The *Chandris* court then provided guidance in ascertaining who is a "member of the crew" and, therefore, a seaman. The court held:

"[T]he total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon." *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 432 (CA5 1984). The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

. . . .

A maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land-based and therefore not a member of the vessel's crew, regardless of what his duties are. Naturally, substantiality in this context is determined by reference to the period covered by the Jones Act plaintiff's maritime employment, rather than by some absolute measure.

. . . .

A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. As we have said, "[t]he inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it." *Wilander*, 498 U.S., at 356, 111 S.Ct., at 818.

*Chandris*, 515 U.S. at 370-71, 115 S.Ct. at 2190-91.

6

In 1997, the United States Supreme Court in *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 117 S.Ct. 1535. . . (1997), further clarified the rule by stating:

> For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.

*Harbor Tug*, 520 U.S. at 555, 117 S.Ct. at 1540.

*Richard v. Mike Hooks, Inc.*, 01-145, pp. 3-5 (La. 10/16/01), 799 So.2d 462, 465-66 (alterations in original).

In the case before us, the trial court issued a judgment dismissing Troglen's claims because it found that Troglen failed to prove that he was a Jones Act seaman. Given the standard of review, we must determine whether a reasonable factual basis exists in the record for the trial court to have made that finding.

Mr. William LeBlanc, a former employee of B&C and coworker that Troglen worked directly under, testified that he and Troglen worked for B&C at the time of the accident and that Troglen spent at least 80% of his time during working hours on the fixed platform. LeBlanc discussed that Troglen's job duties as a helper entailed being a "gopher" for tools located in the tool box that were needed by the other more skilled workers in performing their job. The tool box in this particular case was located on the fixed platform. LeBlanc further testified that Troglen's job duties would not have required him to spend any more time on the RAM VII than any of the other B&C employees, that none of the B&C workers were allowed in certain areas on the RAM VII or the supply vessel, and that Troglen was not a member of either the supply vessel's or the RAM VII's crew. Finally, LeBlanc, testified that B&C had no control in terms of crewing, upkeep, or

maintenance over either the supply vessel or the RAM VII, that workers from various companies ate, slept, and used the restroom facilities on the RAM VII, and that nearly all of the pipe being used by B&C for its restoration job was on the fixed platform with a minimal amount stored on the RAM VII.

The testimony of Mr. Eulen J. Bergeron, Jr. was similar to that of Mr. LeBlanc. Mr. Bergeron was the House and Safety Environment Manager for B&C at the time of the accident, but, like Mr. LeBlanc, was no longer employed by B&C at the time of his testimony. He testified that B&C generally worked under the guidance and direction of a "company man," in this particular case, an employee of Nexen. Mr. Bergeron testified that their mission was to perform work on the well and that the vessels did not assist B&C in that mission because they only "provided living quarters, eating space, a galley, and additional storage space." Further, while Mr. Bergeron agreed that it was necessary for the supply boat to bring B&C's equipment to the fixed platform on this particular job, he stated that the supply boat was not chartered by B&C. Additionally, he testified, as Mr. LeBlanc did, that B&C had no crew on either the supply boat or the RAM VII and that the majority of B&C's work was performed on the fixed platform.

Another of Troglen's coworkers, Mr. Brinton Johnson, provided deposition testimony entered into the record as an exhibit. Like Mr. LeBlanc and Mr. Bergeron, Mr. Johnson testified in his deposition that his and Troglen's work was on the fixed platform, not the RAM VII. He characterized the RAM VII as "just a means of sleeping and somewhere where we could eat." Johnson testified that on this job they used the RAM VII as a work area "very seldom" and that they stored minimal supplies on the RAM VII that were not expected to be used on a particular day of work. He also testified that that the supply boat made trips to and from land

under the direction of Nexen, not B&C.  Finally, Johnson testified that "[t]he guys on the RAM VII do not work with us as far as our operation."

Given the testimony above, we find that a reasonable factual basis exists for the trial court to find that Troglen failed to carry his burden to prove that he was a Jones Act seaman.  The summation of the witness testimony can reasonably be interpreted that Troglen's connection to the RAM VII was tenuous and, therefore, not substantial in duration or nature as required by the second prong of the *Chandris* test.  Accordingly, we find no merit the Troglen's second issue presented for review.

## CONCLUSION:

Marshall Troglen appeals the trial court's judgment dismissing his Jones Act claims against Hydraulic Well Control, a subsidiary of/and Boots & Coots Service, L. L. C. because it found that he failed to carry his burden to prove that he met the qualities of a Jones Act seaman.  After reviewing the two issues presented for review by Troglen, we find no error by the trial court in its judgment.  The trial court used the correct legal standard to reasonably find that Troglen failed to carry his burden of proof.  Accordingly, we affirm the judgment of the trial court and assess all costs of these proceedings to Marshall Troglen.

**AFFIRMED.**